FILED
**DECEMBER 19, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HSBC MORTGAGE SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No.: | **07 C 7144** |
| | ) | |
| CREVECOR MORTGAGE, INC. | ) | **JUDGE PALLMEYER** |
| | ) | **MAGISTRATE JUDGE ASHMAN** |
| Defendant. | ) | |

### COMPLAINT FOR BREACH OF LOAN PURCHASE AGREEMENTS

Plaintiff, HSBC Mortgage Services, Inc. ("HSBC Mortgage Services") by its attorneys, Loeb & Loeb LLP, hereby complains of defendant CreveCor Mortgage, Inc. ("CreveCor") as follows:

#### PARTIES

1.  Plaintiff HSBC Mortgage Services (f/k/a Household Financial Services, Inc. and JV Mortgage Capital, L.P.) is a Delaware corporation and conducts business at 2700 Sanders Road, Prospect Heights, IL 60070.

2.  Defendant CreveCor (f/k/a Creve Coeur Mortgage Associates, Inc.) is a Missouri corporation and conducted business at 1150 Hanley Industrial Court, St. Louis, Missouri, 63144.

#### JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) as complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this judicial district. In

addition, pursuant to the terms of the "Loan Purchase Agreements" (as hereinafter defined), the Defendant has submitted to venue in this judicial district.

## BACKGROUND

**The Loan Purchase Agreements**

5. CreveCor is in the business of originating and selling mortgage loans. HSBC Mortgage Services in turn purchases mortgage loans.

6. In March 2000, to facilitate future sales of mortgage loans by CreveCor to HSBC Mortgage Services (collectively, the "Parties"), and for good and sufficient consideration, the Parties entered into two loan purchase agreements. In those agreements, the Parties set forth various terms and conditions under which CreveCor could, from time to time, offer portfolios of mortgage loans for sale to HSBC Mortgage Services, and under which HSBC Mortgage Services could accept or reject such offers.

7. Specifically, the Parties first entered into the Bulk Loan Purchase Agreement, dated as of March 10, 2000 (the "Bulk Loan Purchase Agreement"). A true and correct copy of the Bulk Loan Purchase Agreement is attached hereto and incorporated herein as Exhibit A.

8. The Parties then entered into the Flow Loan Purchase Agreement dated March 30, 2000 (the "Flow Loan Purchase Agreement"). A true and correct copy of the Flow Loan Purchase Agreement is attached hereto and incorporated herein as Exhibit B. The Bulk Loan Purchase Agreement and the Flow Loan Purchase Agreement shall be collectively referred to as the "Loan Purchase Agreements."

**The Premium Rebate Provisions**

9. As part of the Loan Purchase Agreements, the Parties agreed to a formula for calculating the purchase price of the loans that CreveCor offered to HSBC Mortgage Services.

Under those formulas, HSBC Mortgages Services could agree to a price that included a premium above the principal amount of the underlying loan it was purchasing.

10. CreveCor agreed in both Loan Purchase Agreements that if any loan purchased by HSBC Mortgage Services from CreveCor was paid off by the borrower within the first 12 months of HSBC Mortgage Services' purchase, then CreveCor would refund a certain percentage of the premium paid by HSBC Mortgage Services. The amount of the rebate is determined by a formula explicitly set forth in each Loan Purchase Agreement.

**The Loan Repurchase Provisions**

11. In Sections 4.2 and 4.3 of the Bulk Loan Purchase Agreement, CreveCor made detailed representations and warranties about the nature and characteristics of the individual loans offered and sold to HSBC Mortgage Services.

12. Specifically, in Section 4.2(b) of the Bulk Loan Purchase Agreement, CreveCor represented, among other things, that the loans being offered for sale to HSBC Mortgage Services met identified underwriting criteria. CreveCor also promised in Section 4.2(b): "The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact and do not omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading."

13. In Section 4.3(a) of the Bulk Loan Purchase Agreement, CreveCor represented and warranted that each loan sold to HSBC Mortgage Services was "free and clear of any encumbrance, equity interest, participation interest, lien, pledge, charge, claim or security interest."

14. In Section 4.3(c) of the Bulk Loan Purchase Agreement, CreveCor represented and warranted that the borrower for each loan sold to HSBC Mortgage Services made or shall make the first monthly payment with respect to the underlying loan on its respective due date.

15. In Section 4.3(k) of the Bulk Loan Purchase Agreement, CreveCor represented and warranted that the mortgage associated with any loan purchased by HSBC Mortgage Services created "a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property."

16. In Section 8 of the Bulk Loan Purchase Agreement, CreveCor agreed that the covenants, representations and warranties set forth in that agreement would survive the delivery and release of the underlying loan documents to HSBC Mortgage Services.

17. Pursuant to Section 9.1 of the Bulk Loan Purchase Agreement, CreveCor promised to repurchase the respective loans that were the subject of any breached representations, warranties or agreements that remained uncured thirty days after CreveCor received notice of such breaches from HSBC Mortgage Services.

18. In Section 9.2 of the Bulk Loan Purchase Agreement, CreveCor and HSBC Mortgage Services set forth the formula for determining the repurchase price that CreveCor would pay to buy back any loans that Section 9.1 of the Bulk Loan Purchase Agreement obligated CreveCor to repurchase.

19. In the Flow Loan Purchase Agreement, CreveCor and HSBC Mortgage Services also agreed to similar representation and warranty provisions with repurchase obligations.

20. Specifically, in Section 4.B of the Flow Loan Purchase Agreement, CreveCor set forth various representations and warranties with respect to loans sold to HSBC Mortgage Services subject to the Flow Loan Purchase Agreement.

21. Pursuant to Section 5 of the Flow Loan Purchase Agreement, CreveCor agreed that the covenants, representations and warranties set forth in that agreement would survive the delivery and release of the underlying loan documents to HSBC Mortgage Services.

22. Pursuant to Section 10 of the Flow Loan Purchase Agreement, CreveCor promised to repurchase the respective loans that were the subject of any breached representations, warranties or agreement within five days of HSBC Mortgage Services' demand, unless HSBC Mortgage Services, at its sole option, gave CreveCor thirty additional days to cure its breaches.

23. In Section 11 of the Flow Loan Purchase Agreement, CreveCor and HSBC Mortgage Services set forth the formula for determining the repurchase price that CreveCor would pay to buy back any loans that Section 10 of the Flow Loan Purchase Agreement obligated CreveCor to repurchase.

24. HSBC Mortgage Services purchased mortgage loans from CreveCor pursuant to the terms of the Loan Purchase Agreements.

25. HSBC Mortgage Services has paid the purchase price required by the Loan Purchase Agreements, has provided all requisite notices to CreveCor and has otherwise materially performed under the Loan Purchase Agreements.

26. From August of 2002 through the present, CreveCor breached one or more of its representations and warranties with respect to certain of the mortgage loans that CreveCor sold to HSBC Mortgage Services pursuant to one of the Loan Purchase Agreements.

27. In accord with Section 9.1 of the Bulk Loan Purchase Agreement and Section 10 of the Flow Loan Purchase Agreement, HSBC Mortgage Services wrote CreveCor giving them notice of the breached provisions and demanded CreveCor satisfy its repurchase obligation.

28. Where CreveCor failed to satisfy its promise to repurchase the mortgage loans, HSBC Mortgage Services attempted to mitigate its loss. For example, in cases in which the original borrower defaulted on a loan that CreveCor should have repurchased, HSBC Mortgage

Services took prudent steps to protect itself from further loss by foreclosing on the underlying collateral where appropriate. In doing so, HSBC Mortgage Services incurred significant expenses and costs, including legal fees.

29. In many cases, even taking such steps, HSBC Mortgage Services was not able to fully recover the loss caused by CreveCor's breaches.

30. As of the filing of this Complaint, CreveCor has failed to pay HSBC Mortgage Services the outstanding repurchase price due under Section 9 of the Bulk Loan Purchase Agreement, and Sections 10 and 11 of the Flow Loan Purchase Agreement.

## COUNT I
### (BREACH OF CONTRACT – REPURCHASE OBLIGATION)

31. HSBC Mortgage Services realleges and incorporates by reference herein the allegations of paragraphs 1-30 of this Complaint as if fully set forth herein.

32. In the Loan Purchase Agreements, CreveCor made certain representations and warranties regarding the loans it offered and sold to HSBC Mortgage Services.

33. CreveCor subsequently breached one or more of its representations and warranties with respect to loans it sold to HSBC Mortgage Services pursuant to one of the Loan Purchase Agreements.

34. As required by the Loan Purchase Agreements, HSBC Mortgage Services notified CreveCor of such breaches.

35. CreveCor failed to cure such breaches within 30 days.

36. Having failed to cure such breaches, CreveCor was obligated by Section 9.1 of the Bulk Loan Purchase Agreemen and Section 10 of the Flow Loan Purchase Agreement to repurchase the corresponding loans from HSBC Mortgage Services.

37. CreveCor, however, further breached the Loan Purchase Agreements by failing to satisfy its repurchase obligations.

38. HSBC Mortgage Services notified CreveCor by letter dated May 4, 2007 (the "Demand Letter"), that to satisfy its outstanding repurchase obligations, CreveCor owed HSBC Mortgage Services $7,317,560.83 as of April 30, 2007. A true and correct copy of the Demand Letter is attached hereto and incorporated herein as Exhibit C.

39. CreveCor, however, continues to refuse to repurchase the loans as the Loan Purchase Agreements require.

40. In breaching its obligation to repurchase the loans as required under the Loan Purchase Agreements, CreveCor has directly and proximately caused HSBC Mortgage Services to be damaged in an amount to be proven at trial.

## COUNT II
### (BREACH OF CONTRACT – PREMIUM REBATE)

41. HSBC realleges and incorporates by reference herein the allegations of paragraphs 1-40 of this Complaint as if fully set forth herein.

42. Under the Loan Purchase Agreements, HSBC Mortgages Services agreed to buy certain loans from CreveCor at a price that included a premium above the principal amount of the underlying loans.

43. In Section 2.5 of the Bulk Loan Purchase Agreement and Section 7b of the Flow Loan Purchase Agreement (the "Premium Rebate Provisions"), CreveCor agreed that if any of the loans that it sold to HSBC Mortgage Services were paid in full by the borrower within twelve months of HSBC Mortgage Services' purchase, then CreveCor would rebate a portion of the premium paid by HSBC Mortgage Services.

44.    For certain of the loans sold by CreveCor to HSBC Mortgage Services, the respective borrowers in fact paid their loans in full during the twelve months following HSBC Mortgage Service's purchase of such loans.

45.    CreveCor was therefore obligated to refund a portion of the premium that HSBC Mortgage Services had paid according to a formula set forth in the respective Premium Rebate Provisions.

46.    CreveCor, however, failed to rebate the premiums as it had promised.

47.    In the Demand Letter that HSBC Mortgage Services sent CreveCor on May 4, 2007, HSBC Mortgage Services also notified CreveCor that as of April 30, 2007, CreveCor owed $608,533.80 to HSBC Mortgage Services for premium recapture under the Loan Purchase Agreements.

48.    CreveCor nevertheless has refused to rebate the premiums.

49.    By breaching the Premium Rebate Provisions in the Loan Purchase Agreements, CreveCor has directly and proximately caused HSBC Mortgage Services to be damaged in an amount to be proven at trial.

## COUNT III
### (IDEMNIFICATION)

50.    HSBC realleges and incorporates by reference herein the allegations of paragraphs 1-49 of this Complaint as if fully set forth herein.

51.    Pursuant to Section 12 of the Flow Loan Purchase Agreement, CreveCor agreed to indemnify and hold HSBC Mortgage Services harmless "against any loss, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses . . . resulting from any claim, demand, defense or assertion based or grounded upon, resulting from

or arising in connection with, a breach of [CreveCor's] covenants, representations and warranties under this Agreement [and related documents]."

52. Similarly, pursuant to Section 10.1 of the Bulk Loan Purchase Agreement, CreveCor also agreed to indemnify HSBC Mortgage Services for "any loss, cost, expense, damage, liability, or claim (including, without limitation, all Legal Fees) relating to, arising out of, based upon, or resulting from . . . (ii) [CreveCor's] breach of any of its representations and warranties contained in this Agreement; or (iii) [CreveCor's] breach of or failure to perform any of its covenants or agreements contained in or made pursuant to this Agreement."

53. As detailed above, CreveCor has breached its warranties and representations made in the Loan Purchase Agreements with respect to the loans it offered and sold to HSBC Mortgage Services. CreveCor has also breached its obligations under the Loan Purchase Agreements to repurchase certain loans. CreveCor further breached the Loan Purchase Agreements by failing to rebate certain premiums to HSBC Mortgage Services.

54. In light of CreveCor's breaches and pursuant to the indemnification provisions in the Loan Purchase Agreements, CreveCor is liable to HSBC Mortgage Services for all HSBC Mortgage Services' loss and damages arising from CreveCor's various breaches, including damages arising from CreveCor's breach of warranties and representations, breach of its repurchase obligations, and breach of its agreement to repay certain premiums. Under the same indemnification provisions, CreveCor is also liable for all HSBC Mortgage Services' related costs, expenses and legal fees, including those accruing in connection with bringing this action, and those related to actions HSBC Mortgage Services brought to mitigate its losses with respect to loans that CreveCor wrongfully has refused to repurchase.

*   *   *

**WHEREFORE**, HSBC Mortgage Services respectfully requests that this Court enter a judgment in favor of HSBC Mortgage Services against Defendant, CreveCor, award damages in an amount to be proven at trial, including accrued interest, late charges, costs, expenses and attorneys' fees incurred and expenses by HSBC Mortgage Services in enforcing its rights under the Loan Purchase Agreements, and grant HSBC Mortgage Services such other relief as this Court deems just and appropriate under the circumstances.

Dated: December 19, 2007                                    Respectfully submitted,

                                                                           HSBC MORTGAGE SERVICES, INC.

                                                                           By: /s/ Michael L. Molinaro
                                                                                   One of Its Attorneys

Michael L. Molinaro (ARDC No.:  6183321)
Blair R. Zanzig (ARDC No.: 6273293)
LOEB & LOEB LLP
321 North Clark Street
Suite 2300
Chicago, Illinois  60610
Telephone:  (312) 464-3100
Facsimile:  (312) 464-3111

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HSBC MORTGAGE SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: |
| | ) | |
| CREVECOR MORTGAGE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### NOTIFICATION OF AFFILIATES – DISCLOSURE STATEMENT

In accordance with Local Rule 3.2, Plaintiff HSBC Mortgage Services, Inc. states that it is a nongovernmental corporate party wholly-owned by HSBC Finance Corporation, which is an indirect subsidiary of HSBC Holdings plc, a publicly held company.

Dated: December 19, 2007  Respectfully submitted,

HSBC MORTGAGE SERVICES, INC.

By: /s/ Michael L. Molinaro
      One of Its Attorneys

Michael L. Molinaro (ARDC No.: 6183321)
Blair R. Zanzig (ARDC No.: 6273293
LOEB & LOEB LLP
321 North Clark Street
Suite 2300
Chicago, Illinois  60610
Telephone:  (312) 464-3100
Facsimile:  (312) 464-3111

CH34404.2