**07 C 7144**

**JUDGE PALLMEYER
MAGISTRATE JUDGE ASHMAN**

# EXHIBIT B

# FLOW LOAN PURCHASE AGREEMENT

THIS AGREEMENT is made and entered into this 30 day of March, 2000, by and between HOUSEHOLD FINANCIAL SERVICES, INC., a Delaware corporation, and its Affiliates (hereinafter, respectively "Buyer" or "HFS"), and Creve Coeur Mortgage Associates, Inc., a Missouri corporation, with a principal office located at 1525 Olde Cabin Road ("Seller"). Creve Coeur MO 63141

WHEREAS, Seller is engaged in the business of making, originating or otherwise acquiring non-conforming Mortgage Loans on completed, one-to-four family residential properties; and

WHEREAS, Seller desires from time to time to sell to Buyer, and Buyer desires to purchase from Seller from time to time particular Mortgage Loans and all monies due and to become due thereunder.

NOW, THEREFORE, in consideration of the premises and other covenants contained herein Buyer and Seller agree as follows:

1. **MORTGAGE PURCHASES.** Seller from time to time may offer to sell and Buyer may agree to buy Mortgage Loans and the right to service those Loans pursuant to the provisions of this Agreement, the HFS Seller's Guide (as defined below) and any confirmation letters, commitment letters or other correspondence (collectively referred to as "Letters") between Buyer and Seller. The sale and transfer of Mortgage Loans by Seller to Buyer shall be subject to the provisions of this Agreement, the HFS Seller's Guide and the Letters.

2. **DEFINITIONS.** Whenever used in this Agreement, the following words, unless otherwise expressly provided or unless the context otherwise requires, shall have the following meanings:

    A. "Affiliate" means, with respect to Buyer, any corporation which, directly or indirectly, controls, is controlled by, or is under common control with Buyer.

    B. "Credit Package" means the documents and verifications required to underwrite the loan application and lead to an approval or denial of the loan request.

    C. "ECOA" means the Equal Credit Opportunity Act (15 USC § 1691).

    D. "FHLMC" means the Federal Home Loan Mortgage Corporation.

    E. "FNMA" means the Federal National Mortgage Association.

F. "GNMA" means the Governmental National Mortgage Association.

G. "HFS Seller's Guide" means the Household Financial Services Seller's Guide and the Exhibits therein as presently in effect or as may be changed from time to time. The HFS Seller's Guide describes, among other things Buyer's underwriting guidelines, appraisal guidelines, documentation requirements for purchased Loans, and loan programs.

H. "Mortgage," "Mortgage Loan," or "Loan" refer to whole loans or home equity lines of credit secured by a first or second lien on completed, one-to-four family residential real estate and purchased by Buyer from Seller subject to this Agreement, the HFS Seller's Guide and the Letters. The terms include all documents required to be transferred from Seller to Buyer by the HFS Seller's Guide and the Letters. The term "Mortgage" shall include trust deeds, security deeds and deeds of trust as well as mortgages and the terms "Mortgagor" and "Mortgagors" shall mean mortgagors, trustors of trust deeds and deeds of trust and the grantors of any security deeds.

I. "Mortgage File" means all the documents, information and other items pertaining to a particular Mortgage Loan required by this Agreement, the HFS Seller's Guide or any Letter for Mortgage Loans purchased by Buyer from Seller.

J. "Note" means a valid and enforceable Note or evidence of indebtedness secured by a Mortgage.

K. "RESPA" means the Real Estate Settlement Procedures Act (12 USC § 2601).

L. "TIL" means the Truth in Lending Act (15 USC § 1601).

3. PROCEDURAL MATTERS. Buyer may waive Paragraphs A, B and C below, in its sole discretion, for Mortgage Loans in a second lien position.

A. Seller must register any Mortgage Loan it intends to sell to Buyer prior to submission of the Mortgage Loans to Buyer for approval, Registration shall be made pursuant to the requirements set forth in the HFS Seller's Guide and any Letters. Upon proper registration by Seller, the rate and price shall be locked-in by Buyer in accordance with the terms set forth in the HFS Seller's Guide. By registering a Mortgage Loan, Seller obligates itself to deliver to Buyer any such Mortgage Loan closed by Seller. Delivery of the Mortgage File to the Buyer shall be made in accordance with the HFS Seller's Guide and any Letters. In the event Seller is unable to deliver any Loans as provided herein due to rejection of any loan applicant or cancellation of any Loan after registration or for any reason whatsoever, Seller shall notify Buyer in writing within twenty-four (24) hours

after such rejection, cancellation or other reason for failure to deliver such Loan(s).

B. Upon completion of the Credit Package, Seller shall send the original Credit Package, plus one copy (two copies if mortgage insurance is required), to Buyer. A copy of the Letter confirming rate lock registration must be included in each Credit Package.

C. Buyer's underwriter shall review any such Credit Package based upon FNMA/FHLMC guidelines and/or Buyer's then current Mortgage Loan underwriting criteria applicable to the loan program under which the Mortgage Loan application was registered. Buyer reserves the right, in its sole discretion, to approve or decline the Credit Package. Buyer shall provide to Seller its credit decision in accordance with the terms of the HFS Seller's Guide.

D. Seller shall close the Mortgage Loan in its own name and shall advance the original principal balance out of its own funds.

E. Buyer shall purchase Mortgage Loans which have been approved by Buyer, closed and delivered by Seller in accordance with the HFS Seller's Guide pursuant to the funding procedures set forth therein.

4. **SELLER'S REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants to Buyer and Buyer's successors and assigns as follows, it being acknowledged that each such representation and warranty is true and relates to material matters upon which Buyer relied, and it being understood that each such representation and warranty is made to Buyer as of the date hereof, and hereafter as of each and every date Seller sells a Mortgage Loan to Buyer:

   A. As to Seller:

   1) Seller is duly organized, validly existing and in good standing under the laws stated in the first paragraph and is qualified and authorized to transact business in, and is in good standing under the laws of, each jurisdiction in which any mortgaged property is located or is otherwise exempt under applicable law from such qualification and no demand for such qualification has been made upon Seller by any such State and in any event the Seller is or will be in compliance with the laws of any such State to the extent necessary to insure the enforceability of such Mortgage Loan and the servicing of the Mortgage Loans in accordance with the terms of this Agreement.

3

2) Seller is a FNMA/FHLMC approved Seller, an FHA approved mortgagee as described in 12 USC 1709 and/or a VA authorized lender as described in 38 USC 1802 or is an approved lender as determined by Buyer, and will retain said status so long as this Agreement shall remain in effect.

3) The Seller has corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement and any Letters (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement and any Letters evidence the valid, binding and enforceable obligation of the Seller. No officer or agent of Buyer shall be required to make any inquiry concerning the validity of any transaction purported to be made by Seller, when made by any officer or agent of the Seller; and Buyer may conclusively assume that every obligation, contract, instrument, act or thing done and executed by any person purportedly on behalf of Seller has been so executed or done in the official capacity as the agent or officer for the Seller.

4) The execution, delivery and performance of this Agreement will not violate any state or Federal law, rule or regulation, or any judicial administrative order, decree or ruling, or Seller's organization documents or any material instrument or agreement to which Seller is a party or by which it is bound.

5) Seller has good title to and is the sole owner of each Loan. Seller is either the original mortgagee or holder in due course of the Loan and there has been no prior assignment, sale or hypothecation by Seller or said Loan. Seller has full right, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan to Buyer pursuant to this Agreement free and clear of any encumbrance, lien, claim or security interest.

6) No litigation or administrative proceedings of or before any court, tribunal, or governmental body is presently pending, or to the knowledge of the Seller, is threatened against Seller which, if adversely determined, would have a material adverse effect on the business, assets or financial condition of Seller.

7) Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement, the HFS Seller's Guide or any Letter, or in connection with the transactions contemplated hereby, contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

8) Seller has, and will maintain, at its own expense, a Fidelity Bond with broad coverage and an Errors and Omissions Policy in the amount and with the coverages required by the HFS Seller's Guide and any Letters. Seller shall furnish proof of such coverage at or before selling Loans to Buyer, and thereafter at Buyer's request, no less frequently than once each year.

B. As to each Mortgage Loan:

1) The Note and the related Mortgage are genuine, are on forms acceptable to FNMA/FHLMC or to HFS and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms. All parties to the Note and Mortgage had legal capacity to execute the Note and the Mortgage and each Note and Mortgage has been duly and properly executed by the Mortgagor and acknowledged, where required.

2) The proceeds of the Mortgage Loan have been fully disbursed to the Mortgagor or on his account; all costs, fees and expenses incurred in the making, closing and recording of the Mortgage Loan including, but not limited to, recording fees, documentary stamps, intangible taxes, hazard insurance premiums and any other taxes or assessments due and payable have been so paid. There is no requirement for future advances under the Mortgage Loan and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor have been complied with. Seller has not and no prior holder of the Mortgage has advanced funds or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor directly or indirectly, for the payment of any amount required by the Mortgage, except for the interest accruing from the date of the Note or date of disbursement of the Mortgage proceeds, whichever is later, to the day which precedes by one month the due date of the first installment of principal and interest.

3) All loans have been originated, processed, closed and serviced in compliance with all terms and conditions of this Agreement, the HFS Seller's Guide and the Letters, and all applicable Federal and state laws and governmental regulations, including without limitation, administrative rules and regulations of the, ECOA, TIL, RESPA, the Consumer Credit Protection Act, the Federal Fair Housing Act, the National Flood Insurance Act, and any usury laws.

APR-24-07  09:27  FROM-                                    T-768  P.055/067  F-471

4) The outstanding principal balance is correctly stated; all monthly payments, including sums attributable to escrow for mortgage insurance, taxes and hazard insurance, are current, and there has been no breach of the terms and conditions of the Mortgage.

5) The Note and Mortgage are not subject to any right of rescission, setoff, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Note or Mortgage, or the exercise of any right thereunder, render the Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense including the defense of usury and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto.

6) There is in force a paid up policy of hazard insurance, and where applicable, flood insurance, insuring the improvements on the property encumbered by the Mortgage written by an insurer meeting the requirements of the HFS Seller's Guide and any Letters, in an amount at least equal to the lesser of 100% of the insurable value of the improvements or the unpaid principal, balance of the Mortgage. In any event, the insurance may not be less than the full replacement value of the improvements. The insurance must be without a co-insurance clause, must contain a standard mortgagee clause and loss payable endorsement in favor of Buyer, including Buyer's address and must comply with any other requirements of the HFS Seller's Guide and any Letters.

7) All improvements on the mortgaged property conform with all local and county zoning ordinances and other applicable laws so as to permit use and occupancy thereof as one-to-four family residence. If required by law or regulation, all environmental permits have been secured.

8) All improvements lie wholly within the boundaries and building restriction lines of such property and no improvements on adjoining properties encroach upon the mortgaged property, unless a title insurance policy is in effect which insures against loss from any such encroachment.

9) The Mortgage has been recorded and represents a valid first or second lien on the real property securing the loan except for real estate taxes and special assessments not yet due and payable. The mortgaged property is free and clear of all mechanic's and materialmen's liens or liens in the nature thereof, and no rights are outstanding that could give rise to any such lien.

10) The Mortgagor has duly executed appropriate evidence indicating that the Mortgagor has received the disclosure materials as required by applicable laws and regulations.

11) Each Mortgage which Seller represents to be insured by a private mortgage insurance company, or to be insured or guaranteed by an agency of the Federal government, is so insured or guaranteed, and such mortgage insurance complies with the requirements of the HFS Seller's Guide and any Letters.

12) Seller has not taken any action nor failed to take any action which might cause the cancellation of or otherwise adversely affect any of the required insurance policies, including hazard, flood, title and mortgage insurance, on the Loans.

13) Seller shall deliver to Buyer an appraisal of the mortgaged property signed prior to the approval of the Mortgage application by a qualified appraiser, acceptable to Buyer, who has no interest, direct or indirect, in the mortgaged property or in any loan on the security thereof and who does not receive compensation which is affected by the approval or disapproval of the Mortgage Loan. The appraisal shall be completed in compliance with the Uniform Standards of Professional Appraisal Practice, the HFS Seller's Guide and any Letters, and all applicable Federal and state laws and regulations.

14) The transfer and assignment of the Note and Mortgage from Seller to Buyer is valid and sufficient to vest title to the Note and Mortgage in Buyer.

15) Each Mortgage Loan is covered by an ALTA mortgage title insurance policy or other generally acceptable form of policy or insurance acceptable to FNMA/FHLMC or Buyer issued by and the valid and binding obligation of a title insurer acceptable to FNMA/FHLMC or Buyer and qualified to do business in the jurisdiction where the property subject to the Mortgage is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan; the Seller is the named insured and the sole insured of such mortgage title insurance policy; the mortgage title insurance policy contains all endorsements required by FNMA/FHLMC guidelines or the HFS Seller's Guide and any Letters; the assignment to the Buyer of the Seller's interest in such mortgage title insurance policy does not require the consent of or notification to the insurer; such mortgage title insurance policy is in full force and effect and will be in full force and effect and inure to the benefit of Buyer upon the consummation of the transactions contemplated by this Agreement and no claims have been made under such mortgage title insurance policy. Notwithstanding the first sentence of this Paragraph 15, if permitted by the HFS Seller's Guide, for a mortgage

lien in second position, a title search has been performed in lieu of a commitment of title insurance.

16) There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration; and the Seller has not waived any default, breach, violation or event of acceleration. No Mortgage Loan payment is more than thirty (30) days past due.

17) The related Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the mortgaged property of the benefits of the security; including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. There is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the mortgaged property at a trustee's sale or the right to foreclose the Mortgage.

18) With respect to each Mortgage constituting a deed of trust, a trustee duly qualified under applicable law to serve as such has been properly designated and currently so serves and is named in such deed of trust.

19) There is no proceeding pending or threatened for the total or partial condemnation of the mortgaged property and said property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty, so as to affect adversely the value of the mortgaged property as security for the Mortgage Loan or the use for which the premises were intended.

20) Neither Seller nor any prior holder has modified the Mortgage or Note in any respect. The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the mortgaged property has not been released, in whole or in part, from the lien of the Mortgage; nor has any instrument of release, cancellation, subordination, modification, rescission or satisfaction been executed; provided, however, that all warranties under this Section 4.B.20 shall be deemed not to have been made with respect to any specific matter brought to the attention of Buyer in writing prior to the payment of the purchase price for that Loan and specifically acknowledged by Buyer in writing.

21) There are no circumstances or conditions with respect to the Mortgage, the mortgaged property, the Mortgagor or the Mortgagor's credit standing that can be reasonably expected to cause private institutional investors to

regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan.

22) No mortgaged property is subject to a ground lease unless specifically authorized in writing by Buyer.

23) All documents submitted by Seller pursuant to this Agreement are genuine and contain genuine signatures; the Mortgage, the Note and any other documents submitted by Seller to Buyer which Buyer requires to be original documents, are original documents; all certified copies of original documents are true copies of the originals; and all other representations by Seller as to each Mortgage Loan are true and correct and meet the applicable requirements and specifications of this Agreement, the HFS Seller's guide and any Letters.

5. **SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES. REPURCHASE OBLIGATION OF SELLER.** It is understood and agreed that the covenants, representations and warranties set forth in this Agreement, the HFS Seller's Guide or any Letters shall survive delivery and release of the Mortgage File to Buyer and shall inure to the benefit of the Buyer, or any holder of any endorsement of any mortgage note or any examination of the Mortgage File. Seller hereby waives the benefit of any applicable statute of limitations with respect to the aforesaid covenants, representations and warranties.

6. **COMPLIANCE WITH INSURANCE REQUIREMENTS.** Seller warrants that it will comply with and use its best efforts to cause each Mortgagor to comply with all applicable state and Federal rules and regulations or requirements of the private mortgage insurance companies, including those requiring the giving of notices. Where applicable, Seller warrants that it will comply with the National Housing Act of 1934, as from time to time amended, or with the Servicemen's Readjustment Act of 1944, as amended, and with all rules and regulations issued under either Act, and with the requirements of private mortgage insurance companies, the giving of all notices and submitting of all claims required to be given or submitted to the end that the full benefit of either the Federal Housing Administration insurance, the guaranty of the United States of America, or the private mortgage insurance will inure to Buyer. Seller warrants it will forward copies of all such notices or claims to Buyer if requested by Buyer.

7a. **PURCHASE PRICE.** The purchase price will consist of the following: 1) the outstanding principal balance on the date of sale, 2) the accrued and unpaid interest, and 3) the premium as calculated in the HFS National Wholesale Correspondent Pricing Sheet, as published from time to time.

7b. **PREMIUM REBATE.** In the event that a premium is paid by the Buyer to the Seller on a Loan and such Loan is prepaid in full by the Borrower, other than by a refinancing by the Buyer or any of its subsidiaries or affiliates, within twelve (12) months of the purchase date, the Seller shall, upon demand by the Buyer, refund to the Buyer the premium paid by the Buyer to the Seller as follows: if prepayment in full is within one (1) month of the purchase date, 12/12ths of the premium shall be refunded; if prepayment in full is between one (1) and two (2) months of the purchase date, 11/12ths of the premium shall be refunded; if prepayment in full is between two (2) and three (3) months of the purchase date, 10/12ths of the premium shall be refunded; if prepayment in full is between three (3) and four (4) months of the purchase date, 9/12ths of the premium shall be refunded; if prepayment in full is between four (4) and five (5) months of the purchase date, 8/12ths of the premium shall be refunded; if prepayment in full is between five (5) and six (6) months of the purchase date, 7/12ths of the premium shall be refunded; if prepayment in full is between six (6) and seven (7) months of the purchase date, 6/12ths of the premium shall be refunded; if prepayment in full is between seven (7) and eight (8) months of the purchase date, 5/12ths of the premium shall be refunded; if prepayment in full is between eight (8) and nine (9) months of the purchase date, 4/12ths of the premium shall be refunded; if prepayment in full is between nine (9) and ten (10) months of the purchase date, 3/12ths of the premium shall be refunded; if prepayment in full is between ten (10) and eleven (11) months of the purchase date, 2/12ths of the premium shall be refunded; if prepayment in full is between eleven (11) and twelve (12) months of the purchase date, 1/12th of the premium shall be refunded. In the event any Loan is prepaid in full later than twelve (12) months from the purchase date of such Loan, no refund shall be due. In the event the Note carries a prepayment penalty, the Buyer agrees to recapture the premium rebate from the proceeds of the prepayment penalty and then from Seller, if there is any deficient balance according to the refund calculation specified above.

8. **DELIVERY OF LOAN DOCUMENTATION.** Seller agrees to do all acts necessary to perfect title to the Mortgage Loans in Buyer, and shall sell, assign and deliver to Buyer with respect to the purchase of each such Mortgage Loan the following documents, all subject to the approval of Buyer and its legal counsel as to proper form and execution:

   A. Mortgage Note properly endorsed by Seller and any prior holder showing a complete chain of title in accordance with Buyer's requirements.

   B. The original Mortgage, with evidence of recording thereon, or if the original Mortgage has not been returned from the recording office, a copy of such original Mortgage certified true and correct by Seller in which case Seller shall deliver to Buyer the original recorded Mortgage within 60 days from the date of funding by Buyer.

C. The original executed Assignment of Mortgage from Seller to Buyer, in recordable form and, if applicable, any intervening assignments of mortgage, with evidence of recording thereon.

D. An original appraisal of the secured property performed and signed in accordance with the requirements of this Agreement, the HFS Seller's Guide and any Letters.

E. An original mortgage title insurance policy if required under Paragraph 4.B.15, issued by an approved ALTA title insurance company in such form and subject to such exceptions as are approved by Buyer and Buyer's counsel; provided, however, that if the original is not available as of date the Mortgage File is delivered to Buyer, Seller shall deliver the original to Buyer within 60 days from the date of funding by Buyer.

F. A survey of the property secured by the Mortgage to the extent required by applicable state law or required in order to enable Buyer to sell the Mortgage to or place the Mortgage with a private investor.

G. A hazard insurance policy with one (1) year's paid receipt issued or written by an insurance company which has been approved by Buyer and meeting the requirements set forth in 4.B.6 hereof, the HFS Seller's Guide and the Letters, and a flood insurance policy or application if applicable.

H. A statement showing the unpaid principal balance of the periodic installments and the date(s) to which principal, interest and any escrows have been paid; and, if required by Buyer, a ledger card or ledger history reflecting all receipts and disbursements from the inception of the Mortgage Loan including the date of each receipt or disbursement.

I. A copy of the Settlement Statement (HUD-1) and Truth-In-Lending Disclosure statement prepared in connection with the Mortgage Loan indicating that the Mortgagor has received the disclosures required by the TIL and RESPA.

J. Any and all documents, agreements or instruments related to the Mortgage or the Note and Seller's right and benefits therein; all documents related to the making and closing of the Loan; and any other documents, agreements, or instruments related to the Mortgage Loan or required by Buyer as specified in the HFS Seller's Guide and the Letters, in order to perfect its right, title and interest in and to the Mortgage Loan or required by Buyer in order to enable Buyer to sell the Mortgage Loan to or place the Mortgage Loan with a private investor. If all final documentation is not delivered to Buyer within the time period required by Buyer, Seller shall, at Buyer's option, repurchase the Loan or Loans upon demand in

accordance with the repurchase provisions of this Agreement. Extensions of the final documentation deadline may be granted at Buyer's option only. Buyer's acceptance of delivery of the loan documentation does not constitute approval of such documentation or a waiver of any Buyer's rights under this Agreement.

9. **ELIGIBILITY OF MORTGAGE LOANS FOR SALE OR TRANSFER.** Seller agrees to take such action and to prepare, execute, assign and deliver to Buyer such documents, including but not limited to, the Mortgage, assignment of the Mortgage to Buyer, and Note properly endorsed, in such form as shall enable Buyer at Buyer's option to sell the Loan to a private investor. In addition, Seller agrees, from time to time, upon Buyer's request, to provide Buyer with additional evidence that Seller's representations and warranties contained herein are true and correct. This may include, without limitation, providing Buyer with opinions of Seller's counsel, providing Buyer with certified copies of resolutions of Seller authorizing the sale of Mortgage loans, as well as providing Buyer with reasonable access to Seller's financial records and allowing Buyer to conduct periodic on-site audits of Seller's business activities related to this Agreement. Such additional requirements shall be subject to the reasonable approval of Seller and its counsel.

10. **REPURCHASE OF MORTGAGE LOANS.** Within five (5) business days of Seller's receipt of written demand by Buyer or Buyer's assignee, Seller shall repurchase from Buyer, at the repurchase price set forth herein, any of the following Loans:

   A. Any Loans for which Seller has failed to deliver to Buyer any document required by this Agreement, the HFS Seller's Guide or any Letters within the required time frame.

   B. Any Loan with respect to which the warranties, representations or agreements of this Agreement, the HFS Seller's Guide or any Letter are breached by the Seller as determined by Buyer, or wherein, in Buyer's opinion, Seller or Seller's agent has acted fraudulently or negligently in the origination or closing of a Loan.

   C. Any Loan where the first payment becomes more than thirty (30) days past due.

   D. Any Loan for which Buyer has, at its own expense, within 100 days after the purchase date, received a re-appraisal indicating a fair market value of more than twelve (12%) percent less than the original appraisal value. In that event, upon receipt by Seller of a signed copy of the reappraisal from Buyer, Seller shall repurchase the Loan at the Repurchase Price and reimburse Buyer for the cost of the appraisal subject to the following: if Seller disputes the validity of the reappraisal prepared by Buyer's appraiser, Seller may at its own expense, request Buyer to obtain a third appraisal, and only if such third appraisal is also more than twelve (12%) percent less than the original appraisal value shall the Seller be required to repurchase the Loan at the Repurchase Price and pay for the second

appraisal. Buyer shall choose the review appraiser with Seller's approval, which shall not be unreasonably withheld, but such appraiser must possess the minimum qualifications specified in Buyer's Underwriting Guidelines. The appraisal must be performed in accordance with the standards of the appraising industry where the property is located, by an independent appraiser unless otherwise agreed to by the parties. In determining the appropriate appraisal value, the review appraiser must determine the appraised value as of the original appraisal date using comparable sales that were available as of the date of the original appraisal.

E. Any Loan which Buyer sold to any other investor which Buyer is required to repurchase due to a deficiency in or omission with respect to the documents, instruments and agreements pertaining to the Loan which deficiency or omission was caused by someone other than Buyer, or for any of the reasons set forth in this Section 10.

At Buyer's option, Seller may be given thirty (30) days to correct or cure any deficiencies which, in the Buyer's judgment, created a breach of this Agreement.

11. **REPURCHASE PRICE.** In the event Seller repurchases a Loan from Buyer pursuant to paragraph 10 A.-D above, the price shall be that amount equal to the greater of (a) the purchase price paid to Seller by Buyer less any repayment of principal received, plus accrued but unpaid interest, or (b) the unpaid principal balance of the Loan at the date of repurchase plus accrued but unpaid interest. Upon payment of the repurchase price as set forth herein, the Loan shall be considered to have been rejected by the Buyer. At the time of repurchase, Buyer shall arrange for the re-delivery of the Mortgage File and reassignment of the Note and Mortgage to Seller.

In the event that Seller repurchases a Loan from Buyer pursuant to paragraph 10.E. above, the price to be paid by Seller to Buyer shall be an amount equal to the sum Buyer was required to pay in order to repurchase the Loan from any private investor through the date of the repurchase of the Loan from Buyer by Seller plus any costs or expenses incurred by Buyer in connection with the transaction.

12. **INDEMNIFICATION.** In addition to Seller's repurchase obligation, Seller shall indemnify and hold Buyer harmless against any, loss, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses heretofore and hereafter resulting from any claim, demand, defense or assertion based or grounded upon, resulting from or arising in connection with, a breach of Seller's covenants, representations and warranties under this Agreement, the HFS Seller's Guide or any Letters. The obligations of Seller under this Section shall survive the delivery and funding of the Mortgage Loans and the termination of this Agreement.

13. **BOOKS AND RECORDS.** Seller agrees to keep and maintain such books and records so as to meet and comply with all applicable laws, and the requirements or recommendation of ECOA, or as specified during business hours, for examination and audit. Said records shall include a Loan register documenting all loan applications taken by Seller.

14. **FINANCIAL INFORMATION.** Seller shall furnish to Buyer for as long as this Agreement is in effect, as soon as available, and in any event within ninety (90) days after the end of each fiscal year of Seller, audited or certified financial statements of Seller consisting of a balance sheet as of the end of such fiscal year, together with related statements of income or loss and reinvested earnings and changes in financial position of Seller for such fiscal year, prepared by independent certified public accountants in accordance with generally accepted accounting principles. In addition, Seller shall also provide Buyer, from time to time, upon reasonable request and sixty (60) days' notice, any other financial reports or statements reasonably required by Buyer. Seller shall promptly advise Buyer of any substantial change in Seller's ownership, financial condition, or senior management.

15. **ESCROW DEPOSITS AND SERVICING RIGHTS.** At the time each Loan is sold to Buyer, Seller shall transfer, assign and convey to Buyer all of Sellers' right, title and interest in and to all escrow deposits held in connection with the Loans. Seller hereby irrevocably assigns to Buyer its right to service each Loan sold pursuant to this Agreement and to collect any servicing fee in connection with such Loan.

16. **RESTRICTIVE COVENANT.** For a period of five (5) years from the date of any Loan Sale, the Seller agrees, on behalf of itself, its subsidiaries, and affiliates, that it will not use any information obtained, directly or indirectly, from the Mortgage Files for the purpose of soliciting (or assisting any other person in soliciting) mortgage or home equity loans from the Mortgagors of the Loans.

In the event that the Seller breaches this covenant resulting in the prepayment of any Loan purchased by Buyer, the Seller shall pay to Buyer an amount equal to the lesser of (i) 5% of the outstanding principal balance of any Loan which is so prepaid or (ii) the amount of damages claimed by the Buyer as a result of such prepayment (including attorney's fees, if any) as set forth by the Buyer in writing.

17. **TERMINATION AND DEFAULT.** This Agreement may be terminated with or without cause by either party upon thirty (30) days written notice to the other party, provided that the delivery requirements and other terms of this Agreement, the HFS Seller's Guide and any Letters have been fully complied with. After termination, the provisions of this Agreement, the HFS Seller's Guide and any Letters shall continue to apply to any Mortgage Loans transferred from Seller to Buyer pursuant to this Agreement and any Letters.

APR-24-07   09:30   FROM-                                    T-768   P.064/067   F-471

If Seller breaches or defaults upon any term or condition of this Agreement, or does not deliver the Loans within the time periods stated in the HFS Seller's Guide or any Letter or otherwise fails to comply with the Agreement, the HFS Seller's Guide or any Letter, Buyer shall not be required to purchase any Loans. Seller shall be deemed to be in default if any of the following shall occur:

A. Seller breaches or fails to comply with any term or provision of this Agreement, the HFS Seller's Guide or any Letter.

B. Any of Seller's representations or warranties in this Agreement, the HFS Seller's Guide or in any Letter are untrue.

C. Any document or paper delivered hereunder is incorrect in any material respect or otherwise does not comply with the terms and provisions of this Agreement, the HFS Seller's Guide or any Letter.

D. Any substantial reduction in Seller's net worth, as determined solely by Buyer.

E. A petition for involuntary bankruptcy is filed against Seller, or Seller is adjudged bankrupt or insolvent by a court of competent jurisdiction or a regulatory agency, or a Court of competent jurisdiction or a regulatory agency appoints a receiver, liquidator, conservator or trustee for Seller or all or substantially all of its assets, or approves any petition filed against the Seller for its reorganization.

F. Seller institutes proceedings for voluntary bankruptcy, files a petition seeking reorganization under the Federal Bankruptcy Act, files under any law for the relief of debtors, consents to the appointment of a receiver of all or substantially all of its property, makes a general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due.

G. Seller, without Buyer's consent, merges with or consolidates into another corporation, sells or otherwise disposes of all or substantially all of its property and assets, or permits any change to occur in the stock ownership of the company which would transfer effective voting control from the persons now exercising such control to others.

H. The placement of Seller on probation or restriction of its activities in any manner by a Federal or state government agency, including FHLMC, FNMA, or GNMA.

18. **NOTICES.** All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed duly given if delivered or mailed via certified or registered mail, return receipt, requested, postage prepaid or by any generally recognized over night delivery service such as, Express Mail, Federal Express or Airborne, addressed as follows:

to Buyer:   Household Financial Services, Inc.
2700 Sanders Road
Prospect Heights, IL 60070
Attn: Loren J. Morris, Vice President

with a copy to:   Household Financial Services, Inc.
2700 Sanders Road
Prospect Heights, IL 60070
Attn: General Counsel

to Seller:   Creve Cour Mortgage
11525 Olde Cabin Road
Creve Cour, MO 63141
Attention: Thomas Barr

or to such other address as Buyer and Seller shall, have specified in writing to each other.

19. **NO WAIVER.** Failure or delay on the part of Buyer to audit any Loan or to exercise any right provided for herein, shall not act as a waiver thereof, nor shall any single or partial exercise of any right by Buyer preclude any other or further exercise thereof. In no event shall a term or provision of this Agreement be deemed to have been waived, modified or amended, unless said waiver, modification or amendment is in writing and signed by the parties hereto. Notwithstanding any investigation conducted before or after the purchase of any Loan, and notwithstanding any actual or implied knowledge or notice of any facts or circumstances which Buyer may have as a result of such investigation or otherwise, Buyer shall be entitled to rely upon the warranties, representations and covenants of Seller in this Agreement, the HFS Seller's Guide or in any Letter, and the obligations of Seller with respect thereto shall survive the purchase of said Loans by Buyer and inure to the benefit of all future assignees of said Loans.

20. **NO REMEDY EXCLUSIVE.** No remedy under this Agreement is intended to be exclusive of any other available remedy, but each remedy shall be cumulative and shall be in addition to other remedies given under this Agreement or existing at law or in equity.

21. **INDEPENDENT CONTRACTOR.** Nothing herein contained shall be deemed or construed to create a partnership or joint venture between Seller and Buyer. In the performance of its duties or obligations under this Agreement, Seller shall be deemed to

be, or conduct itself to insure that its status shall be that of an independent contractor operating as a separate entity. None of Seller's employees, agents or servants are entitled to the benefits that are provided to the employees of the Buyer. Buyer is solely interested in the results obtained under this contract and therefore the manner and means of conducting Seller's business affairs are under the sole control of Seller and Seller shall be solely and entirely responsible for its acts and for the acts of its agents, employees and servants.

22. **BUYERS ACCEPTANCE.** This Agreement shall not be binding on Buyer until Buyer's acceptance of same at its offices in Prospect Heights, Illinois. Acceptance of the Agreement by Buyer shall be deemed to have occurred in Prospect Heights, Illinois when the Agreement is signed by an authorized representative of Buyer and mailed or delivered to the Seller.

23. **ENTIRE AGREEMENT.** Seller acknowledges that no representations, agreements or promises were made to Seller by Buyer or any of its employees other than those representations, agreements or promises specifically contained herein, in the HFS Seller's Guide or in any Letters. This Agreement, the HFS Seller's Guide and any Letter constitutes the entire Agreement and understanding of the parties with respect to the matters and transactions contemplated hereby. This Agreement supersedes any prior Agreement and understanding with respect to these matters and transactions.

24. **ASSIGNMENT.** Neither party shall have the right to assign any of its duties, obligations or rights under this Agreement without the prior written consent of the other; provided, however, that Buyer may assign its interests in this Agreement and/or in any Letter to any affiliate.

25. **MODIFICATION.** This Agreement may not be modified except by a writing signed by both parties.

26. **GOVERNING LAW.** This Agreement shall be governed by and be considered in accordance with the laws of the State of Illinois.

27. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

28. **CHOICE OF FORUM.** Any judicial proceeding brought against any of the parties hereto with respect to this Agreement shall be brought in any court of competent jurisdiction in Cook County, Illinois or in the Federal District Court for the Northern District of the State of Illinois irrespective of where such party may be located at the time of such proceeding, and by execution and delivery of this Agreement, each of the parties to this Agreement hereby consents to the exclusive jurisdiction of any such court and waives any defense or opposition to such jurisdiction.

29. **WAIVER OF JURY TRIAL.** EACH PARTY HERETO WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

IN WITNESS WHEREOF, Buyer and Seller have caused their respective duly authorized representatives to execute this Agreement as of the date first written above.

(BUYER)   HOUSEHOLD FINANCIAL SERVICES, INC.

By: _____

Title: Loren J. Morris, Vice President

(SELLER) Creve Cour Mortgage Associates, Inc.

By: _____

Title: Sr. Vice President

(Corporate Seal)

i:\hbfsblaw\standard\flowagr2a.doc
2/14/00