UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HSBC MORTGAGE SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No.: 07 C 7144 |
| | ) | |
| v. | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| CREVECOR MORTGAGE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINITFF'S MOTION
FOR ENTRY OF JUDGMENT BY DEFAULT PURSUANT TO FED. R. CIV. P. 55(b)(2)**

Plaintiff HSBC Mortgage Services, Inc. ("HSBC Mortgage Services" or "Plaintiff"), by its attorneys, Loeb & Loeb LLP, submit this Memorandum of Law in Support of its Motion for Entry of Judgment by Default Pursuant to Fed. R. Civ. P. 55(b)(2) against Defendant CreveCor Mortgage, Inc. ("CreveCor" or "Defendant").

**INTRODUCTION**

HSBC Mortgage Services and CreveCor entered into two contracts pursuant to which HSBC Mortgage Services would purchase mortgage loans from CreveCor based on CreveCor's representations and warranties that such mortgages possessed certain characteristics. CreveCor agreed to repurchase the mortgages that failed to live up to CreveCor's representations. CreveCor also agreed to refund a proportion of the premium HSBC Mortgage Services paid should any of the underlying borrowers pay off the mortgages within a year of HSBC Mortgage Services' purchase. CreveCor failed to fulfill these promises, and HSBC Mortgage Services consequently filed this action on December 19, 2007. HSBC Mortgage Services served CreveCor with the Complaint and Summons on December 21, 2007, and filed proof of service on January 8, 2008. On February 4, 2008, the Court entered default against CreveCor pursuant

to Fed. R. Civ. P. 55(a) for failing to plead or otherwise defend this action. HSBC Mortgage Services now seeks entry of a judgment by default pursuant to Fed. R. Civ. P. 55(b)(2) in the aggregate amount of $7,926,094.63.

## STATEMENT OF FACTS

**The Loan Purchase Agreements**

CreveCor is in the business of originating and selling mortgage loans, while HSBC Mortgage Services in turn purchases mortgage loans. (Carse Aff. ¶ 6.)[1] In March 2000, to facilitate future sales of mortgage loans by CreveCor to HSBC Mortgage Services (collectively, the "Parties"), and for good and sufficient consideration, the Parties entered into two loan purchase agreements. (*Id.* ¶ 7.) In those agreements, the Parties set forth various terms and conditions under which CreveCor could, from time to time, offer portfolios of mortgage loans for sale to HSBC Mortgage Services, and under which HSBC Mortgage Services could accept or reject such offers. (*Id.* ¶ 8.)

Specifically, the Parties first entered into the Bulk Loan Purchase Agreement dated as of March 10, 2000 (the "Bulk Loan Purchase Agreement"). (*Id.* ¶ 9; Carse Aff. Ex. A.)[2] The Parties then entered into the Flow Loan Purchase Agreement dated March 30, 2000 (the "Flow Loan Purchase Agreement"). (Carse Aff. ¶ 10; Carse Aff. Ex. B.) The Bulk Loan Purchase Agreement and the Flow Loan Purchase Agreement shall be collectively referred to as the "Loan Purchase Agreements."

---

[1] "Carse Aff. ¶ __" refers to the corresponding paragraph of the Affidavit of Robert K. Carse in Support of Plaintiff HSBC's Motion for Entry of Judgment by Default Pursuant to Fed. R. Civ. P. 55(b)(2) (the "Carse Affidavit") filed concurrently with this memorandum and incorporated herein by reference.
[2] "Carse Aff. Ex. __" refers to the corresponding exhibit attached to the Carse Affidavit.

**The Premium Rebate Provisions**

According to the purchase price formula in the Loan Purchase Agreements, HSBC Mortgage Services could agree to a price that included a premium above the principal amount of the underlying loan it was purchasing. (Carse Aff. ¶¶ 11-12; Ex. A (Bulk Loan Purchase Agreement) § 2.3, § 1.1 (definition of "Purchase Price"); Carse Aff. Ex. B. (Flow Loan Purchase Agreement) ¶ 7a.) After entering into the Loan Purchase Agreements, HSBC Mortgage Services purchased numerous loans from CreveCor. (Carse Aff. ¶ 13.)

CreveCor agreed in both Loan Purchase Agreements that if any loan purchased by HSBC Mortgage Services from CreveCor was paid off by the borrower within the first twelve months of HSBC Mortgage Services' purchase, then CreveCor would refund a certain percentage of the premium paid by HSBC Mortgage Services. (Carse Aff. ¶ 14; Carse Aff. Ex. A § 2.5; Carse Ex. B ¶ 7b.) The percentage of the rebated premium is determined by a formula explicitly set forth in each of the Loan Purchase Agreements. (Carse Aff. ¶ 15; Carse Aff. Ex. A §2.5; Carse Aff. Ex. B ¶ 7b.) Generally, the percentage of the premium varies proportionally to how early the borrower prepays the loan. (*Id.*) For example, if a borrower paid off the loan in the first month, CreveCor would be obligated to rebate 100% of the premium. (*Id.*) If a borrower paid off the loan between the 6th and 7th month after HSBC Mortgage Service purchased the loan, then CreveCor would only be obligated to rebate 50% of the premium. (*Id.*) Under the Loan Purchase Agreements, HSBC Mortgage Services is to apply the amount of any prepayment penalty that it collects from the borrower to reduce the rebate that CreveCor would otherwise owe. (*Id.* ¶ 16; Carse Aff. Ex. A § 2.5; Carse Aff. Ex. B ¶ 7b.)

For those loans listed in Exhibit C to the Carse Aff., the underlying borrowers paid the loans in full within twelve months of HSBC Mortgage Services' purchase. (Carse Aff. ¶ 17-18;

Carse Aff. Ex. C.)  Based on the date the borrower repaid the loan, and the original premium paid by HSBC Mortgage Services, HSBC Mortgage Services calculated the amount of premium that CreveCor was to refund pursuant to the Loan Purchase Agreements.  (Carse Aff. ¶ 19; Carse Aff. Ex. C.)  HSBC Mortgage Services further deducted any prepayment penalty collected from the borrower from the amount that CreveCor owed to arrive at a total of $779,072.69.  (Carse Aff. ¶ 20; Carse Aff. Ex. C.)  CreveCor has paid $170,538.90 of this amount, leaving a net balance of $608,533.80.  (Carse Aff. ¶ 21; Carse Aff. Ex. C.)  In a May 4, 2007 letter (the "Demand Letter"), HSBC Mortgage Services notified CreveCor that the $608,533.80 was due and owing as of April 30, 2007, for the rebate of premiums.  (Carse Aff. ¶ 22;  Carse Aff. Ex. D (Demand Letter).)  CreveCor, however, has failed to pay any of this amount.  (Carse Aff. ¶ 23.)

**The Loan Repurchase Provisions**

CreveCor also promised that if any of the numerous loans sold to HSBC Mortgage Services failed to live up to CreveCor's representations and warranties, then CreveCor would repurchase such loans from HSBC Mortgage Services.  CreveCor set out its warranties and representations regarding the nature and characteristics of the loans offered and sold to HSBC Mortgage Services in Sections 4.2 and 4.3 of the Bulk Loan Purchase Agreement, and Section 4.B of the Flow Loan Purchase Agreement.  (Carse Aff. ¶¶ 24, 28; Carse Aff. Ex. A §§ 4.2, 4.3; Carse Aff. Ex. B ¶ 4.B.)  In Section 8 of the Bulk Loan Purchase Agreement and Paragraph 6 of the Flow Loan Purchase Agreement, CreveCor agreed that the covenants, representations and warranties set forth in the Loan Purchase Agreements would survive the delivery and release of the underlying loan documents to HSBC Mortgage Services.  (Carse Aff. ¶¶ 25, 29; Carse Aff. Ex. A § 8; Carse Aff. Ex. B ¶ 5.)

In the event that that CreveCor breached any of its representations or warranties in either of the Loan Purchase Agreements, CreveCor agreed that it would repurchase the respective loans. (Carse Aff. ¶¶ 26, 30; Carse Aff. Ex. A § 9.1; Carse Aff. B § 10.) Pursuant to Section 9.1 of the Bulk Loan Purchase Agreement, CreveCor promised to repurchase the respective loans that were the subject of any breached representations, warranties or agreements that remained uncured thirty days after CreveCor received notice of such breaches from HSBC Mortgage Services. (Carse Aff. ¶ 26; Carse Aff. Ex. A § 9.1.) Pursuant to Paragraph 10 of the Flow Loan Purchase Agreement, CreveCor promised to repurchase the respective loans that were the subject of any breached representations, warranties or agreement within five days of HSBC Mortgage Services' demand, unless HSBC Mortgage Services, at its sole option, gave CreveCor thirty additional days to cure its breaches. (Carse Aff. ¶ 30; Carse Aff. Ex. B ¶ 10.) The Loan Purchase Agreements set forth formulas for determining the repurchase price that CreveCor would pay to buy back any loans subject to repurchase under the Loan Purchase Agreements. (Carse Aff. ¶¶ 27, 31; Carse Aff. Ex. B § 9.1; Carse Aff. Ex. B ¶ 11.)

HSBC Mortgage Services purchased numerous mortgage loans from CreveCor in full compliance with the terms of the Loan Purchase Agreements, including payment of the purchase price. (Carse Aff. ¶ 32.) For a number of these loans, CreveCor had breached one or more of its representations and warranties, including instances in which it turned out that borrower was a greater credit risk than represented, the borrower missed more payments than CreveCor represented, or instances where the borrower had lied in its loan applications. (Carse Aff. ¶33.)

Where CreveCor ignored its promise to repurchase the mortgage loans, HSBC Mortgage Services attempted to mitigate its loss. (Carse Aff. ¶34.) For example, in cases in which the original borrower defaulted on a loan that CreveCor should have repurchased, HSBC Mortgage

Services took prudent steps to protect itself from further loss by foreclosing on the underlying collateral where appropriate. (*Id.*) In doing so, HSBC Mortgage Services incurred significant expenses and costs, including legal fees. (*Id.*)

In order to quantify its losses, HSBC Mortgage Services divided the loans that were subject to repurchase by CreveCor into two categories: (1) loans in which HSBC Mortgage Services had already liquidated the collateral securing the loans; and (2) loans for which the collateral had not be liquidated. (Carse Aff. ¶¶ 35-37, 45.) For the loans in the first category, CreveCor initially owed HSBC Mortgage Services $9,236,098.81 as the total repurchase price. (Carse Aff. ¶¶ 37-43; Carse Aff. Ex. E.) After failing to receive such amounts from CreveCor, HSBC Mortgage Services liquidated the collateral and deducted the net amount received from the total repurchase price owed by CreveCor to arrive at a final amount outstanding of $3,381,867.01. (Carse Aff. ¶ 37; Carse Aff. Ex. E.) CreveCor has failed to pay any of this amount. (Carse Aff. ¶ 44.)

For the second group of loans, CreveCor owed HSBC Mortgage Services a total purchase price of $19,117,549.70. (Carse Aff. ¶¶ 45-48; Carse Aff. Ex. F.) HSBC Mortgage Services then analyzed the likely recovery from the collateral securing these loans. (Carse Aff. ¶ 49; Carse Aff. Ex. F.) Deducting the expected recovery from the total purchase price left a outstanding balance owed by CreveCor of $3,935,693.82. (Carse Aff. ¶ 50; Carse Aff. Ex. F.) CreveCor has failed to pay any of this amount. (Carse Aff. ¶ 51.)

Combing the total amounts due from each group of loans subject to repurchase, CreveCor owes HSBC Mortgage Services a total of $7,317,560.83. (Carse Aff. ¶ 52.) In the Demand Letter, HSBC Mortgage Services notified CreveCor that to satisfy its outstanding repurchase obligations, CreveCor owed HSBC Mortgage Services $7,317,560.83 as of April 30, 2007.

(Carse Aff. ¶ 53; Carse Aff. Ex. D.)  As of the date of this Affidavit, CreveCor has failed to pay any of this amount.  (Carse Aff. ¶ 53.)  Since April 2007, HSBC Mortgage Services has provided CreveCor notice of at least six additional loans that have become subject to recapture.  (*Id.* ¶54; Carse Aff. Ex. G.)  Although the total repurchase price owed for these loans totals $445,460.40, HSBC Mortgage Services has not included these amounts in the above calculated damage analysis.  (Carse Aff. ¶¶ 55-56.)

**CreveCor Fails to Defend this Action**

On or about December 19, 2007, HSBC Mortgage Services filed its complaint against CreveCor asserting two counts of breach of contract and one count for indemnification (the "Complaint").  HSBC Mortgage Services served CreveCor with the Complaint and Summons on December 21, 2007.  Proof of service upon CreveCor was filed with the Court on January 8, 2008 (*See* Proof of Service (Docket #10).)  On February 4, 2008, the Court entered default against CreveCor.  (Minute Order dated February 4, 2008 (Docket # 15).)  To date, CreveCor has failed to file an appearance, much less pled or otherwise defended this action.  Plaintiff now brings its Motion seeking entry of judgment by default pursuant to Fed. R. Civ. P. 55(b)(2).

ARGUMENT

In light of each Defendant's failure to file an answer or otherwise defend this action, the well-pleaded allegations in the Complaint, and the Carse Affidavit, Plaintiff HSBC Mortgage Services is entitled to entry of default judgment against Defendants.  "Default proceedings consist of two stages – the establishment of the default, followed by entry of the default judgment." *Peterson v. Olson,* No. 05 CV 3475, 2006 U.S. Dist. LEXIS 28869, *1 (N.D. Ill. May 2, 2006).  In the first stage, Defendant "fails to appear in response to summons and complaint served upon him" and a default is entered against the Defendant.  *Id.*  Entry of default under Fed. R. Civ. P.

55(a) is a prerequisite to entry of judgment by default under Fed. R. Civ. P. 55(b). *FTC v. 120194 Canada, Ltd.*, No. 04-7204, 2007 U.S. Dist. LEXIS 12657, *25 (N.D. Ill. Feb. 12, 2007) ("Once there has been an entry of default under Rule 55(a), a district court possesses the discretion under Rule 55(b)(2) to enter a default judgment."). *See also* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2682 (3d ed. 1998) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). On February 4, 2008, the Court entered a default against CreveCor pursuant to Fed. R. Civ. P. 55(a) for failure to answer or otherwise defend this action. (*See* Minute Order dated February 4, 2008 (Docket # 15).)

In the second stage, the present posture of this case, the plaintiff establishes its entitlement to the relief it seeks by providing "evidence to the court so that it may determine whether the complaint alleged a cause of action, as well as 'ascertain the amount of damages with reasonable certainty.'" *Peterson*, 2006 U.S. Dist. LEXIS 28869 at *3-*4. "As a general rule, a 'default judgment establishes, as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint.'" *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (quoting *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir. 1982)). That is, "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co.*, 722 F.2d at 1323.

**I.      Through the Well-pleaded Allegations in the Complaint, HSBC Mortgage Services Has Established CreveCor's Liability for Breach of Contract.**

Through its well-pleaded Complaint, HSBC Mortgage Services established CreveCor's liability for breaching the Loan Purchase Agreements. To state a claim for breach of contract under Illinois law, a plaintiff must establish "(1) offer and acceptance, (2) consideration, (3)

definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages."[3] *Association Benefit Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007).  HSBC Mortgage Services alleged each of those elements through its well-pleaded Complaint.

Establishing the *first* element, offer and acceptance, HSBC Mortgage Services alleged that CreveCor and HSBC Mortgage Services entered into both the Bulk Loan Purchase Agreement and Flow Loan Purchase Agreement.  (Compl. ¶ 6-8.)  HSBC Mortgage Services attached and incorporated into its Complaint both contracts.  (*Id.*)  CreveCor and HSBC Mortgage Services acknowledged their acceptance of the terms offered under the contracts by signing each of the Loan Purchase Agreements.  (Compl. Exs. A & B.)

*Second*, the parties entered into these agreements for good and valuable consideration.  (*See* Compl. ¶ 6 ("In March 2000, to facilitate future sales of mortgage loans by CreveCor to HSBC Mortgage Services . . ., and for good and valuable consideration, the Parties entered into two loan purchase agreements.")  More specifically, CreveCor made the representations and warranties about the loans they would sell to HSBC Mortgage Services to induce HSBC Mortgage Services to purchase such loans at the agreed price.  Likewise, the premium recapture further induced HSBC Mortgage services to pay a premium despite the risk that the loans it purchased would be paid off before HSBC Mortgage Services had the opportunity to make a positive return.

***Third***, the written contracts incorporated into the Complaint evidence the definite and certain terms of the Parties' agreement, including, in relevant part, the premium recapture

---

[3] In each of the Purchase Loan Agreements, CreveCor agreed that Illinois law shall govern the obligations of the Parties thereunder.  (Carse Aff. Ex. A § 12.11; Carse Aff. Ex. B. ¶ 26.)

obligations and loan repurchase provisions. (*See* Compl. ¶¶ 11-18, 20-23, 43, 51-52 (setting forth the specific terms of the Loan Purchase Agreements at issue.)

*Fourth,* HSBC Mortgage Services also alleged that it satisfied its own obligations under the contract. (Compl. ¶¶ 24, 25 ("HSBC Mortgage Services has paid the purchase price required by the Loan Purchase Agreements . . . and has otherwise materially performed under the Loan Purchase Agreements."), 34.)

*Fifth,* CreveCor breached the Loan Purchase Agreements by failing, among other things, to pay the premium refund owed on loans that borrowers paid in full within twelve months of HSBC Mortgage Services' purchase, and by failing to pay the repurchase price for loans that were subject of breached warranties and representations. (Compl. ¶ 26, 28, 30, 33, 35, 37, 39, 46, 48, 53.)

*Finally,* HSBC Mortgage Services alleged that it was damaged as a result of CreveCor's breaches. (Compl. ¶ 40, 49, 54.)

## II. The Facts of Record Demonstrate that HSBC Mortgage Services is Entitled to a Judgment in the Amount of No Less Than $7,926,094.63.

A court may enter a default judgment without a hearing on damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323. Here, through the detailed affidavit of Robert K. Carse and the supporting documentary evidence attached thereto, HSBC Mortgage Services has established sufficient facts to allow the Court to ascertain the amount of damages with reasonable certainty.

First, with respect to Plaintiff's claims relating to the outstanding amount for premium recapture, CreveCor owes HSBC Mortgage Services $608,533.80. (Carse Aff. ¶¶ 11-23; Carse Ex. C.) Each of the Loan Purchase Agreements specifies the percentage of the original premium

10

that CreveCor is obligated to refund to HSBC Mortgage Services as a function of how early the underlying borrower pays the loan in full.  (Carse Aff. Ex. A § 2.5; Carse Aff. Ex. B ¶ 7b.)  In his affidavit, Robert Carse explained as part of his responsibilities at HSBC Mortgage Services he is responsible for monitoring and managing any claims HSBC Mortgage Services has under the Loan Purchase Agreements.  (Carse Aff. ¶ 2.)  In Exhibit C of the Carse Affidavit, HSBC Mortgage Services identified each loan that it purchased from CreveCor that the borrower paid in full within a year of HSBC Mortgage Service purchase and the corresponding premium paid by HSBC Mortgage Services.  (Carse Aff. ¶¶ 17-19.)  Exhibit C further evidences when CreveCor purchased each loan and the date when the borrower paid the loan in full, which in turn determines the percentage of the premium (by reference to § 2.5 of the Bulk Loan Purchase Agreement and ¶ 7b of the Flow Loan Purchase Agreement) that CreveCor was obligated to refund.  (*Id.*¶¶ 15, 19.)  Exhibit C also shows the resulting premium rebate calculated by multiplying the rebate percentage by the premium.  (*Id.* ¶ 19.)  Finally, Exhibit C also identifies any prepayment penalties that HSBC Mortgage Services recovered from the borrower that, pursuant to the Loan Purchase Agreements, reduce the amount owed by CreveCor.  (*Id.* ¶¶ 16, 20.)  The total net premium rebate owed by CreveCor for each individual loan less any payments received from CreveCor results in the aggregate damages claimed by HSBC Mortgage Services for CreveCor's breach of the premium recapture obligations is  $608,533.80.  (*Id.* ¶ 21.)

Second, CreveCor owes HSBC Mortgage Services $7,317,560.83 on account of its breached obligations to repurchase certain loan that it sold to HSBC Mortgage Services.  (*Id.* ¶¶ 24-53.)  As of April 2007, a number of the loans that CreveCor had failed to repurchase were in default.  (Carse Aff. ¶ 34.)  In those cases, HSBC Mortgage Services proceeded to foreclose on the collateral securing such loans.  (*Id.*)  In Exhibit E of the Carse Affidavit, HSBC Mortgage

11

Services identifies the individual loans that HSBC Mortgage Services had already foreclosed on as of April 2007. (Carse Aff. ¶ 37.) HSBC Mortgage Services then calculates the total purchase price ($9,236,098.81) that CreveCor owes HSBC Mortgage Services for each loan based on the unpaid balance owed on the loan plus additional interest and costs that HSBC Mortgage Services may recover. (Carse Aff. ¶¶ 38-41, 43.) HSBC Mortgage Services then subtracts the amount that HSBC Mortgage Services recovered from the sale of the collateral and any mortgage insurance received to arrive at the loss suffered by HSBC Mortgage Services. (Carse Aff. ¶¶ 42-43.) Totaling the net loss for each loan results in an aggregate loss of $3,381,867.01. (Carse Aff. ¶ 43.)

For the loans that CreveCor was obligated to repurchase that had not been liquidated by April 2007, HSBC Mortgage Services performed a second analysis evidenced by Exhibit F. (Carse Aff. ¶ 45.) As before, HSBC Mortgage Services identified each such loan subject to repurchase, and calculated the outstanding repurchase price owed by CreveCor based on the unpaid principal balance plus certain other interest and expenses owed by CreveCor, resulting in an aggregate repurchase price for these loans of $19,117,549.70. (Carse Aff. ¶ 46-47.) Mr. Carse then reduced that figure by conservatively assuming HSBC Mortgage Services would be able to net a recovery of 90% of the estimated value of the property through a sale of the collateral securing the loan. (Carse Aff. ¶ 49; Carse Aff. Ex. F.) Mr. Carse again reduced the result by any mortgage insurance recoveries that HSBC Mortgage Services could expect to receive. (Carse Aff. ¶ 49.) The total shortfall from these loans results in an aggregate loss to HSBC Mortgage Services of $3,93,693.82. (*Id.* ¶50.) Together with the loss from the loans whose collateral had already been liquidated as of April 2007, HSBC Mortgage Services suffered damages in the amount of $7,317,560.83. (*Id.* ¶ 52.)

Indeed, this figure is likely a conservative estimate of HSBC Mortgage Services actual damages, as it fails to account for the fact that CreveCor has failed to repurchase at least six additional loans since April 2007 that are not included in this damages calculation. (Carse Aff. ¶¶ 54-56.) The total repurchase price owed on these loans total $445,460.40, making it reasonably certain that HSBC Mortgage Services damages on account of CreveCor breach of its repurchase obligations under the Loan Purchase Agreements is no less than the $7,317,560.83 it seeks here. (Carse Aff. ¶ 56.)

In sum, CreveCor has breached its obligation to refund premiums to HSBC Mortgage Services and its obligations to repurchase certain loans that are the subject of CreveCor's breached representations and warranties. As a result of these breaches, HSBC Mortgage Services has been damaged, at the minimum, in the amounts of $608,533.80 and $7,317,560.83, respectively. Accordingly, the Court should enter judgment by default in favor of HSBC Mortgage Services in the aggregate amount of $7,926,094.63.

## CONCLUSION

For the reasons stated above, HSBC Mortgage Services, Inc. respectfully requests that the Court grant its Motion for Entry of Judgment by Default Pursuant to Fed. R. Civ. P. 55(b)(2) by: (a) entering judgment by default in favor of HSBC Mortgage Services and against Defendant CreveCor Mortgage Services in the amount of $7,926,094.63; (b) awarding post-judgment interest; and (c) grant such other and further relief that is just and appropriate under the circumstances.

Dated: February 14, 2008                    Respectfully submitted,

                                                                                 HSBC MORTGAGE SERVICES, INC.

                                                                                 By:  s/ Blair R. Zanzig
                                                                                          One of Its Attorneys

Michael L. Molinaro (ARDC No.:  6183321)
Blair R. Zanzig (ARDC No.: 6273293)
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, Illinois  60610
Telephone:  (312) 464-3100
Facsimile:  (312) 464-3111

## CERTIFICATE OF SERVICE

I hereby certify that on this 14 day of February 2008, a copy of the foregoing

**Memorandum of Law in Support of Plaintiff's Motion for Entry of Judgment by Default Pursuant to Fed. R. Civ. P. 55(b)(2)** was served on Defendant via first class, United States mail, postage prepaid at the following addresses:

CreveCor Mortgage, Inc.
c/o Howard Wegman, President
P.O. Box 6828
St. Louis, Missouri 63144

Howard Wegman
President of CreveCor Mortgage, Inc.
12503 West Watson Rd.
St. Louis, MO  63127

                                                              s/ Blair R. Zanzig

CH40117.1