APR-24-07   09:14   FROM-                                                                 T-768   P.016/067   F-471

(m) <u>Fair Consideration</u>. The consideration received by Seller upon the sale of the Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Loans.

(n) <u>No Personal Solicitation</u>. For a period of three (3) years from and after each Settlement Date, Seller agrees that it will not take any action or permit or cause any action to be taken by any of its agents and Affiliates, or by any independent contractors or independent mortgage brokerage companies on Seller's behalf, to personally, by telephone or mail, solicit the borrower or Obligor under any Loan for any purpose whatsoever, including to refinance a Loan, in whole or in part, without the prior written consent of the Buyer. It is understood and agreed that all rights and benefits relating to the solicitation of any Obligors and the attendant rights, title and interest in and to the list of such Obligors and data relating to their mortgages (including insurance renewal dates) shall be transferred to the Buyer pursuant hereto on each Settlement Date and Seller shall take no action to undermine these rights and benefits. Notwithstanding the foregoing, it is understood and agreed that promotions undertaken by Seller or any affiliate of Seller which are directed to the general public at large, including, without limitation, mass mailing based on commercially acquired mailings lists, newspaper, radio and television advertisements shall not constitute solicitation under this paragraph.

(o) <u>HUD Approval</u>. Seller is a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Section 203 and 211 of the National Housing Act, as amended.

Section 4.2 <u>Representations and Warranties of Seller Regarding the Offered Loans</u>. With respect to each Offer, Seller represents and warrants to, and covenants with Buyer that, as of the corresponding Offer Date:

(a) <u>Accuracy of Statements</u>. The information contained in the Offered Loan Schedule and all information provided regarding delinquencies in the Offered Loans are true and correct in all respects. Neither the Offered Loan Schedule nor the Loan Documents nor any other document furnished in connection with the Offer contains any untrue statement of fact by Seller, or omits to state a fact, necessary to make the statements of Seller contained therein not materially misleading.

(b) <u>Origination</u>. Each of Offered Loans meets the underwriting standards of Seller, which standards are set forth in Schedule 2 to this Agreement, and were underwritten in strict accordance therewith. Each Loan was originated by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Section 203 and 211 of the National Housing Act or a savings and Loan association, a savings bank, a commercial bank, a credit union, an insurance company, or similar institution which is supervised and examined by a Federal or State authority. The Note, the Mortgage and all other documents contained in the Legal Files are on FNMA or FHLMC uniform instruments or are on forms acceptable to FNMA or FHLMC. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact and do not omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. Seller has not made any representations to the Obligor that are inconsistent with the mortgage instruments used.

APR-24-07   09:14   FROM-                                          T-768   P.017/067   F-471

(c) <u>Genuineness of Signatures</u>. All Loan Documents are genuine and contain genuine signatures. The Loan Documents that Buyer requires to be original documents are original documents. All certified copies of original documents are true copies and meet the applicable requirements and specifications of this Agreement and any other requirements that Buyer has reasonably made of Seller.

Section 4.3 <u>Representations and Warranties of Seller Regarding the Loans</u>. With respect to each Loan, Seller represents and warrants to, and covenants with Buyer that, as of the Settlement Date on which such Loan is sold:

(a) <u>Title to Loans</u>. Seller has good title to and is the sole owner of record and holder of the Loan and the indebtedness evidenced by each Note. Unless otherwise disclosed in the Loan Documents or the Offered Loan Schedule, Seller is the original mortgagee or assignee of the Mortgage, and there has been no more than one prior assignment and no sale, or hypothecation by Seller of the Loan. The Loan is not assigned or pledged, and Seller has good, indefeasible and marketable title thereto, and has full right to transfer and sell the Loan to the Buyer free and clear of any encumbrance, equity interest, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Loan pursuant to this Agreement and following the sale of each Loan, Buyer will own such Loan free and clear of any encumbrance, equity interest, participation interest, lien, pledge, charge, claim or security interest.

(b) <u>Accuracy of the Offered Loan Schedule</u>. The Loan is as described in the Offered Loan Schedule delivered by Seller to Buyer, and the information contained in the Offered Loan Schedule is true and correct as of the Settlement Date.

(c) <u>Payments</u>. As of the Settlement Date, no loan is 30 or more days delinquent (determined on a contractual basis), no Loan will have been 30 or more days delinquent (determined on a contractual basis) more than once during the 12 months preceding the Settlement Date and the borrower has made, or shall make, as the case may be, the first monthly payment with respect to the Loan on its Due Date.

(d) <u>No Outstanding Charges</u>. There are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable. Seller has not advanced funds, or induced or solicited or knowingly received any advance of funds by a party other than the Obligor, direct or indirectly, for the payment of any amount required under the Loan, except for interest accruing from the date of the Note or date of disbursement of the Loan proceeds, whichever occurred later, to the day which precedes by one month the Due Date of the first Monthly Payment.

APR-24-07   09:15   FROM-                                                                                  T-768   P.018/067   F-471

(e) <u>Original Terms Unmodified</u>. The terms of the Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary to protect the interests of the Buyer. The substance of any such waiver, alteration or modification has been approved by the title insurer, to the extent required by the policy, and its terms are reflected on the Loan Schedule. No Obligor has been released, in whole or in part, except in connection with an assumption agreement approved by the title insurer, to the extent required by the policy, and which assumption agreement is part of the Legal File.

(f) <u>Absence of Defenses</u>. The Mortgage and the Note are not subject to any right of rescission, set-off, counterclaim, or defense (including the defense of usury), based on the invalidity or unenforceability of the Note and/or Mortgage or on any conduct of Seller or any of its officers, employees, representatives, or Affiliates in originating or servicing the Loan prior to the Settlement Date. Nor will the operation of any of the terms of the Loan or Note, or the exercise of any right thereunder, render the Loan or Note unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim, or defense (including the defense of usury) based on any such invalidity, unenforceability or conduct. No right of rescission, set-off, counterclaim, or defense with respect thereto has been asserted to Seller or, to Seller's knowledge, has been asserted to any other person.

(g) <u>Hazard Insurance</u>. Pursuant to the terms of the Mortgage, all improvements upon the Mortgaged Property are insured by an insurer acceptable to FNMA against loss by fire and such other risks (excluding mud slides and earthquakes) as are usually insured against in the broad form of extended coverage hazard insurance from time to time available, including flood hazards if upon origination of the Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and if flood insurance was required by federal regulation and such flood insurance has been made available). All such insurance policies (collectively, the "hazard insurance policy") meet the requirements of the current guidelines of the Federal Insurance Administration, conform to the requirements of the FNMA Sellers' Guide and the FNMA Servicers' Guide, and are a standard policy of insurance for the locale where the Mortgaged Property is located. The amount of the insurance is at least in the amount of the full insurable value of the Mortgaged Property on a replacement cost basis or the unpaid balance of the Mortgage Loan, whichever is less. The hazard insurance policy names (and will name) the Obligor as the insured and contains a standard mortgagee loss payable clause in favor of Seller (or Seller's servicer) and its successors and assigns. The Mortgage obligates the Obligor thereunder to maintain the hazard insurance policy at the Obligor's cost and expense, and on the Obligor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Obligor's cost and expense, and to seek reimbursement therefor from the Obligor. Where required by state law or regulation, the Obligor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering a condominium, or any hazard insurance policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Buyer upon the consummation of the transactions contemplated by this Agreement. Seller has not engaged in, and has no knowledge of the Obligor's or any subservicer's having engaged in, any act or omission which would impair the

coverage of any such policy, the benefits of the endorsement provided for therein, or the validity and binding effect of either. In connection with the issuance of the hazard insurance policy, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by Seller.

(h) <u>Compliance with Applicable Laws</u>. Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Loan have been complied with by Seller and, if Seller is not the originator of any such Loan, by the originator of such Loan, and the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations.

(i) <u>No Satisfaction of Mortgage or Note</u>. Neither the Mortgage nor the Note has been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. Seller has not waived the performance by the Obligor of any action, if the Obligor's failure to perform such action would cause the Mortgage Loan to be in default, nor has Seller waived any default resulting from any action or inaction by the Obligor.

(j) <u>Location and Type of Mortgaged Property</u>. The Mortgaged Property consists of a parcel of real property with a single family residence erected thereon, or a two to four-family dwelling, or an individual condominium unit in a low-rise or high-rise condominium project, or an individual unit in a planned unit development. The Mortgaged Property is either a fee simple estate or a long-term residential lease. If the Loan is secured by a long-term residential lease, (A) the terms of such lease expressly permit the mortgaging of the leasehold estate, the assignment of the lease without the lessor's consent (or the lessor's consent has been obtained and such consent is in the Mortgage File) and the acquisition by the holder of the Mortgage of the rights of the lessee upon foreclosure or assignment in lieu of foreclosure or provide the holder of the Mortgage with substantially similar protection; (B) the terms of such lease do not (i) allow the termination thereof upon the lessee's default without the holder of the Mortgage being entitled to receive written notice of, and opportunity to cure, such default, (ii) allow the termination of a lease in the event of damage or destruction as long as the Mortgage is in existence or (iii) prohibit the holder of the Mortgage from being insured under the hazard insurance policy relating to the Mortgaged Property; (C) the original term of such lease is not less than 15 years; (D) the term of such lease does not terminate earlier than five years after the maturity date of the Note; and (E) the Mortgaged Property is located in a jurisdiction in which the use of leasehold estates for residential properties is a widely-accepted practice.

(k) <u>Valid Lien</u>. The Mortgage for any First Mortgage Loan creates a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property, and the Mortgage for any Second Mortgage Loan creates a valid, subsisting, enforceable and perfected second lien on the Mortgaged Property, and in each case includes all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in

or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing. The lien of the Mortgage is subject only to "Permitted Exceptions," which consist of the following:

    (1)    the lien of current real property taxes and assessments not yet due and payable;

    (2)    covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Loan and referred to or otherwise considered in the appraisal made for the originator of the Loan;

    (3)    other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property; and

    (4)    a valid first lien in the case of Loans in a Second Mortgage Loan.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with a First Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected first lien and first priority security interest on the property described therein, and with respect to a Second Mortgage Loan, a second priority security interest, and Seller has full right to sell and assign the same to the Buyer. Except as noted on the Loan Schedule, for any First Mortgage Loan the Mortgaged Property was not, as of the respective date of origination of said First Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien, subordinate to the lien of the Mortgage.

    (l) **Validity of Mortgage Documents**. The Note and the Mortgage and every other agreement, if any, executed and delivered by the Obligor in connection with the Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Note, the Mortgage and each other such related agreement had legal capacity to enter into the Loan and to execute and deliver the Note, the Mortgage and each other such related agreement, and the Note, the Mortgage and each other such related agreement have been duly and properly executed by the respective Obligors. Seller has reviewed all of the documents constituting the Mortgage File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

    (m) **Full Disbursement of Proceeds**. The Loan has been closed, and in the case of a First Mortgage Loan the proceeds of the Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Loan and the recording of the

APR-24-07   09:16   FROM-                                                T-768   P.021/067   F-471

Mortgage were paid, and the Obligor is not entitled to any refund of any amounts paid or due under the Note or Mortgage.

(n) Doing Business. All parties which have had an interest in the Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (2) (a) organized under the laws of such state, or (b) qualified to do business in such state, or (c) federal savings and loan associations, savings banks, or national banks having principal offices in such state, or (d) not doing business in such state.

(o) LTV. The initial principal balance of each Loan was less than or equal to 100% of the lesser of the Appraised Value of the Mortgaged Property at the time the Loan was originated or the sales price of the Mortgaged Property.

(p) Title Insurance. Except for PHL loans, the Loan is covered by either (a) an attorney's opinion of title and abstract of title the form and substance of which is acceptable to FNMA or (b) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the First Mortgage Loan, and as to the second priority lien on the Mortgage in the original principal amount of the Second Mortgage Loan, subject only to the Permitted Exceptions and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. Where required by state law or regulation, the Obligor has been given the opportunity to choose the carrier of such lender's title insurance policy. Seller, its successors and assigns are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is valid and remains in full force and effect and will be in full force and effect upon the sale of the Loan to the Buyer. No claims have been made under such lender's title insurance policy, and no prior holder of the mortgage, including Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy. In connection with the issuance of such lender's title insurance policy, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by Seller.

(q) No Defaults. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note or related documents and no event which, with the passage of time or with notice and the expiration of any applicable grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither Seller nor its predecessors have waived any default, breach, violation or event of acceleration.

(r) <u>No Mechanics' Liens</u>. There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage.

(s) <u>Location of Improvements; No Encroachments</u>. All improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation; provided, that in no event shall a legal non-conforming use of the Mortgaged Property be considered a violation of any such zoning law or regulation.

(t) <u>Payment Terms</u>. For fixed-rate Loans, the Note is payable in equal monthly installments (other than the last payment) of principal and interest. For adjustable-rate Loans, the Mortgage Interest Rate is adjusted in accordance with the terms of the Note and the Note is payable each month and, during an adjustment period or initial period, in equal monthly installments of principal and interest. All required notices of interest rate and payment amount adjustments have been sent to the Obligor on a timely basis and the computations of such adjustments were properly calculated. Installments of interest are subject to change due to the adjustments to the Mortgage Interest Rate of each Interest Rate Adjustment, with interest calculated and payable in arrears, sufficient to amortize the Mortgage Loan fully by the stated maturity date, over an original term of not more than thirty years from commencement of amortization. All Mortgage interest rate adjustments have been made in strict compliance with state and federal law and the terms of the related Note. Any interest required to be paid pursuant to state and local law has been properly paid and credited.

(u) <u>Customary Provisions</u>. The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Upon default by an Obligor on a Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures the holder of the Loan will be able to deliver good and merchantable title to the Mortgaged Property. There is no homestead or other exemption available to the Obligor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption.

(v) <u>Occupancy of the Mortgaged Property</u>. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities.

APR-24-07   09:17   FROM-                                                T-768   P.023/067   F-471

(w) <u>No Additional Collateral</u>. The Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in the "Valid Lien" representation above.

(x) <u>Deeds of Trust</u>. In the event the Mortgage constitutes a deed of trust, a trustee, authorized and duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Buyer to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Obligor.

(y) <u>Due on Sale</u>. The Mortgage for a First Mortgage Loan contains a provision for the acceleration of the payment of the unpaid principal balance of the Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder, at the option of the mortgagee. This provision provides that the mortgagee cannot exercise its option if either (a) the exercise of such option is prohibited by federal law or (b) (i) the Obligor causes to be submitted to the mortgagee information required by the mortgagee to evaluate the intended transferee as if a new loan were being made to such transferee and (ii) the mortgagee reasonably determines that the mortgagee's security will not be impaired by the assumption of such Loan by the transferee and that the risk of breach of any covenant or agreement in the Loan documents is acceptable to the mortgagee. To the best of Seller's knowledge, such provision is enforceable.

(z) <u>Transfer of Loans</u>. Each of the Mortgage and the Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.

(aa) <u>No Buydown Provisions; No Graduated Payments or Contingent Interests</u>. The Loan does not contain provisions pursuant to which Monthly Payments are paid or partially paid with funds deposited in any separate account established by Seller, the Obligor or anyone on behalf of the Obligor, or paid by any source other than the Obligor nor does it contain any other similar provisions currently in effect which may constitute a "buydown" provision. The Loan is not a graduated payment mortgage loan and the Loan does not have a shared appreciation or other contingent interest feature.

(bb) <u>Consolidation of Future Advances</u>. Any future advances made to the Obligor prior to the Offer Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority, if a First Mortgage Loan, or as having a second lien priority, if a Second Mortgage Loan, by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to the Buyer. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

(cc) <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>. There is no proceeding pending or, to the best of Seller's knowledge upon reasonable due inquiry and

18

investigation, threatened for the total or partial condemnation of the Mortgaged Property. The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Loan or the use for which the premises were intended and each Mortgaged Property is in good repair. There have not been any condemnation proceedings with respect to the Mortgaged Property and Seller has no knowledge of any such proceedings in the future.

(dd) Collection Practices; Escrow Deposits. The origination, servicing and collection practices used by Seller with respect to the Loan have been in accordance with Accepted Servicing Practices and are in all respects in compliance with all applicable laws and regulations. With respect to escrow deposits and Escrow Payments, all such payments are in possession of Seller or the servicer of such Loan and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. All Escrow Payments have been collected in full compliance with state and federal law. Unless prohibited by applicable law, an escrow of funds has been established in an amount sufficient to pay for every item which remains unpaid and which has been assessed but is not yet due and payable. No escrow deposits or Escrow Payments or other charges or payments due Seller have been capitalized under the Mortgage or the Note.

(ee) Appraisals. Except for PHL loans, Seller has delivered to Buyer an appraisal of the Mortgaged Property signed prior to the approval of the Mortgage application by a qualified appraiser, who (i) is licensed in the state where the Mortgaged Property is located, (ii) is acceptable to Buyer, (iii) has no interest, direct or indirect, in the Mortgaged Property or in any loan on the security thereof, and (iv) does not receive compensation that is affected by the approval or disapproval of the Loan. The appraisal shall be completed in compliance with the Uniform Standards of Professional Appraisal Practice, and all applicable federal and state laws and regulations.

(ff) Soldiers' and Sailors' Relief Act. The Obligor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to, the Obligor under the Soldiers' and Sailors' Civil Relief Act of 1940.

(gg) Environmental Matters. To the best of the Seller's knowledge, there exists no violation of any local, state or federal environmental law, rule or regulation in respect of the Mortgaged Property which violation has or could have a material adverse effect on the market value of such Mortgaged Property. Seller has no knowledge of any pending action or proceeding directly involving the related Mortgaged Property in which compliance with any environmental law, rule or regulation is in issue; and, to the best of Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to the use and enjoyment of such Mortgaged Property.

(hh) Obligor Acknowledgment. The Obligor has executed a statement to the effect that the Obligor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans. Seller shall maintain or cause to be maintained such statement in the Credit File.

(ii) <u>No Construction Loans</u>. The Loan was not made in connection with (a) the construction or rehabilitation of a Mortgaged Property or (b) facilitating the trade-in or exchange of a Mortgaged Property.

(jj) <u>Selection</u>. The Loans were not selected for inclusion under this Agreement from among the Seller's mortgage loan portfolio on any basis which would have an adverse affect on the interests of the Buyer.

(kk) <u>Circumstances Affecting Value, Marketability or Prepayment</u>. Except as otherwise disclosed to the Buyer, Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Obligor, or the Obligor's credit standing that could reasonably be expected to adversely affect the value or the marketability of any Mortgaged Property or Loan, subject to the economic and geological conditions generally and specifically to the area in which the Mortgaged Property is located.

Section 4.4 <u>General Representations and Warranties of Buyer</u>. As of the date hereof, and as of each Settlement Date, Buyer represents and warrants as follows:

(a) <u>Organization</u>. Buyer is a corporation, duly organized, validly existing, and in good standing under the laws of the state of its incorporation, and is qualified and authorized to transact business in, and is in good standing under the laws of, each jurisdiction in which any Mortgaged Property is located or is otherwise exempt under applicable law from such qualification. Buyer has the requisite corporate power and authority to own and operate its properties, to carry on its business as it is now being conducted, and to consummate the transactions contemplated by this Agreement.

(b) <u>Authorization of this Agreement</u>. Buyer has the requisite corporate power and authority to execute and deliver this Agreement, and to consummate the transactions contemplated hereby. The execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporation action, and no other corporate proceedings on the part of Buyer are necessary to authorize this Agreement or to consummate the transactions contemplated hereby. This Agreement has been duly executed and delivered by Buyer and constitutes a legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except that such enforcement may be affected by bankruptcy, by other insolvency laws, or by general principles of equity.

(c) <u>No Conflict or Violation</u>. The execution and delivery of this Agreement by Buyer does not, and the performance of this Agreement by Buyer will not, (i) result in a violation of or conflict with any provisions of the charter or by-laws or equivalent governing instruments of Buyer, (ii) violate any law, rule, regulation, code, ordinance, judgment, injunction, order, writ, decree, or ruling applicable to Buyer, or (iii) conflict with or violate any agreement, permit, concession, grant, franchise, license, or other governmental authorization or approval necessary for purchase of the Loans by Buyer. No regulatory approvals or consents are required with respect to Buyer's consummation of the transactions contemplated by this Agreement.

20

(d) <u>Litigation</u>. No action, suit, proceeding, or governmental investigation or inquiry is currently pending, or to the knowledge of Buyer, threatened against Buyer which, if adversely determined, would have a material adverse effect on the business, combined assets or financial condition of Buyer or on the Loans or would prevent the consummation of the transactions contemplated by this Agreement.

(e) <u>Financial Condition</u>. Buyer has previously furnished Seller with Buyer's most recent audited financial statements, together with the respective reports thereon of the Buyer's independent public accountants, and Buyer's most recent unaudited financial statements, each of which has been prepared in accordance with generally accepted accounting principles. Each of the balance sheets included in the financial statements set forth Buyer's financial condition as of the date thereof, and there have been no material adverse changes in Buyer's business or financial condition since that date.

(f) <u>Accuracy of Statements</u>. Neither this Agreement, nor any statement, report, or other document furnished or to be furnished pursuant to this Agreement, or in connection with the transaction contemplated hereby, contains any untrue statement of fact by Buyer or omits to state a fact necessary to make the statements of Buyer contained therein not misleading.

(g) <u>Ability to Perform; Solvency</u>. Buyer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement. Buyer is solvent and the purchase of the Mortgage Loans will not cause Buyer to become insolvent.

(h) <u>No Consent Required</u>. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Buyer of or compliance by Buyer with this Agreement or the Loans, or the purchase of the Loans by Buyer or the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to each Settlement Date.

(i) <u>No Commissions to Third Parties</u>. Buyer has not dealt with any broker or agent or other Person who might be entitled to a fee, commission, or compensation in connection with this transaction other than the Buyer.

**SECTION 5 PRE-SETTLEMENT COVENANTS**

Seller covenants and agrees that:

Section 5.1 <u>Continued Servicing</u>. Seller shall continue servicing the Loans to be sold on each Settlement Date, until the related Service Transfer Date, unless otherwise agreed to in writing by the parties, on Seller's system in conformance with all of the requirements of the Loan Documents and applicable law and in accordance with Accepted Servicing Practices. Seller shall send out at its expense the notice required to be provided to Obligors for any Interest Rate Adjustment scheduled to occur up to 10 days after the Service Transfer Date.

Section 5.2  Preparation of Assignments.  Prior to each Settlement Date, Seller shall, at its sole expense, prepare and deliver an Assignment of Mortgage in form and substance acceptable to Buyer and its counsel and any other security documents corresponding to each Loan to be sold on such Settlement Date. Each such assignment shall be sufficient to perfect the transfer of Seller's security interest in the corresponding Mortgaged Property.

Section 5.3  IRS Reporting.  To the extent required by law, Seller shall report to the IRS and each Obligor the amount of interest paid (including without limitation, the obligations with respect to Forms 1098 and 1099 and back up withholding with respect to same, if required) by such Obligor on the Loan on which he is the Obligor from the date of the advance made by Seller to such Obligor through and including the Service Transfer Date, and Buyer shall thereafter report to the IRS and each Obligor the amount of interest paid by such Obligor on the Loan on which he is the Obligor.

Section 5.4  Compliance with Law.  From the date of this Agreement to each Settlement Date, Seller shall comply with and use its best efforts to cause each Obligor to comply with all applicable state and Federal rules and regulations including those requiring the giving of notices, and where applicable, Seller warrants that it will comply with the National Housing Act of 1934, as from time to time amended, the Servicemen's Readjustment Act of 1944, as amended, and with all rules and regulations issued under said either such act.

Section 5.5  No Sale of Assets.  Without the prior written consent of Buyer, Seller shall not sell, lease, assign, transfer, encumber or permit the encumbrance of, or otherwise dispose of:

(a) any of the Offered Loans from the date of the Offer until the earlier of (i) the day on which Seller receives Buyer's Response or (ii) the close of business on the day after which the Due Diligence Period expires; and

(b) any of the Loans included in the Loan Schedule to Buyer's Response from the date on which such Response is received until the Settlement Date.

Section 5.6  Private Mortgage Insurance.  Seller shall provide any notification to private mortgage insurance companies necessary to ensure continuation of such insurance upon transfer of the Loans to Buyer.

## SECTION 6  POST-SETTLEMENT COVENANTS

Section 6.1  Notice of Servicing Transfer.  Seller and Buyer shall each comply with, and Seller shall assist Buyer in complying with, the notice requirements of the Cranston Gonzalez National Affordable Housing Act of 1990. Such compliance by each party shall include, without limitation, sending its own notices of the transfer of servicing from Seller to Buyer, at its sole expense. For each Loan, Seller shall deposit such notice in the United States mail within five (5) business days after the Settlement Date on which such Loan is sold. Seller's notice to each Obligor shall state that any payments due from such Obligor that are due 15 or more days after the date on which Seller sends such notice shall be made to Buyer. Seller's assistance to Buyer shall include

providing Buyer with any information that Seller has or has access to and that Buyer reasonably requires to complete its notices. Buyer shall approve any such notices sent by Seller, and Seller shall have the right to approve any such notices sent by Buyer, prior to the date mailed. To enable the parties to determine the Service Transfer Date, Seller shall, with respect to all Loans sold on each Settlement Date, send all notices pursuant to this Section 6.1 on the same day, and shall, upon sending such notices, inform Buyer of the date on which such notices are sent. Within 10 days of each Settlement Date, Seller shall deliver to Buyer a copy of the notice sent with respect to each Loan sold on such Settlement Date.

Section 6.2  IRS Examination. Buyer and Seller shall cooperate fully with each other in connection with any examination conducted by any tax authority after each Settlement Date, provided that nothing herein shall be construed as obligating Buyer or Seller to disclose or furnish any tax information not related to the transfer of the Loans. Buyer and Seller shall inform each other promptly of any material developments in the course of any such examination, the results of any such examination, and any proceeding related thereto.

Section 6.3  Tax on Sale. Each party shall promptly pay in full and when due any tax or other governmental charge or fee imposed upon it under applicable law on the sale of the Loans from Seller to Buyer pursuant to this Agreement.

Section 6.4  Books and Records. Seller agrees to keep and maintain such books and records so as to meet and comply with all applicable laws, and the requirements or recommendations of ECOA and TILA. The same shall be available to Buyer at any time, upon reasonable notice, during business hours, for examination and audit to the extent required to determine compliance with such laws. Such records shall include a loan register documenting all loan applications taken by Seller.

Section 6.5  On Site Reviews. Seller agrees, upon reasonable notice and during regular business hours, to meet with Buyer from time to time to discuss Seller's business activities related to this Agreement and to allow Buyer to conduct periodic on-site audits of Seller's business activities related to this Agreement.

Section 6.6  Financial Statements. Each party shall furnish to the other for as long as this Agreement is in effect, (i) as soon as available, and in any event within 90 days after the end of each fiscal year, audited or certified financial statements consisting of a balance sheet as of the end of such fiscal year, together with related statements of income or loss and reinvested earnings and changes in financial position for such fiscal year, prepared by independent certified public accountants in accordance with generally accepted accounting principles, and (ii) if available, within 10 days after the end of each quarterly period unaudited financial statements which may be satisfied by furnishing a copy of the quarterly report filed with the Securities and Exchange Commission. In addition, each party shall provide the other, from time to time, upon reasonable request (which shall include a written statement describing the reason therefor) and 60 days' notice, any other financial reports or statements reasonably required by the requesting party.

Section 6.7  Post-Sale Loan Payments. Seller agrees that it will remit to Buyer, within 48 hours after receipt, any payment on a Loan including, without limitation, all payments of principal

and interest, late charges, and bad check charges received from an Obligor on or after the Settlement Date at the following address: 961 Weigel Drive, Elmhurst, Illinois, 60126, Attn: CPI Cash, Director of Wholesale Processing, or such other address as Buyer may designate. Seller shall remit such payment via an overnight delivery service.

Section 6.8  *Transfer of Servicing Rights and PMI*. Seller shall use all efforts to assist Buyer in the transfer from Seller to Buyer of servicing rights for each Loan, including assisting Buyer with any notices to private mortgage insurance companies.

Section 6.9  *Delivery of Mortgage Loan Documents*. With respect to each Loan, the Seller shall cause by no later than sixty (60) days after the Settlement Date, the original recorded Mortgage and, if applicable, the prior Assignment of Mortgage to be delivered to Buyer if they have not yet been returned from the County Records Office. The Seller shall pay the out-of-pocket costs incurred in connection with such acts.

## SECTION 7  CONDITIONS TO SETTLEMENT

Section 7.1  *Conditions to Buyer's Obligations*. The obligations of Buyer to purchase the Loans at each Settlement are subject to the satisfaction at or prior to such Settlement, of each of the following conditions (any or all of which may be waived by Buyer):

(a)  *Representations and Warranties Correct*. Each of the representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects in accordance with their terms as of the date of this Agreement, and on and as of such Settlement Date with the same force and effect as though made on and as of such Settlement Date, and Seller shall have delivered to Buyer a certificate to such effect signed on Seller's behalf by its President or another appropriate officer.

(b)  *Compliance with Covenants*. Seller shall have performed and be in compliance with, in all material respects, all of its respective covenants, acts, and obligations to be performed under this Agreement and Seller shall have delivered to Buyer a certificate to such effect signed on Seller's behalf by its President or another appropriate officer.

(c)  *Settlement Documents*. Seller shall have executed and delivered this Agreement and the Agreement shall not have been terminated, Seller shall have delivered the Mortgage Files and in connection with the Loans to be purchased on such Settlement Date, and executed all documents required to transfer the Loans in accordance with the terms of this Agreement.

(d)  *Corporate Documents*. On or before the Settlement Date, if Buyer so requests, Seller shall have delivered to Buyer:

(i) a certificate of its jurisdiction of incorporation dated not earlier than the date of the tenth day preceding the Settlement Date, to the effect that Seller is a corporation validly existing and in good standing (if applicable) under the laws of such jurisdiction as of such date;

(ii) a certificate of the Secretary or Assistant Secretary of Seller attaching (A) evidence of such corporate action or authorization as is necessary to approve of this Agreement and the authorization of the officers of Seller to sign this Agreement, which action or authorization shall continue to be in force as of the Settlement Date, and (B) specimen signatures of the officers of Seller authorized to sign this Agreement;

(iii) a copy, certified as true by the Secretary or Assistant Secretary of Seller, of the charter and the by-laws of Seller; and

(iv) all other documents, instruments, and writing required to be delivered by Seller pursuant to this Agreement.

(e) <u>Corporate Actions</u>. All corporate and other acts necessary to authorize the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereunder shall have been taken by Seller.

(f) <u>Access to Information; Due Diligence</u>. Buyer and its representatives shall have had access to such information and records of Seller as Buyer shall have reasonably requested to ascertain Seller's compliance with the Agreement, and all such information and records shall be satisfactory to Buyer and its representatives in accordance with the terms of this Agreement.

(g) <u>No Pending Litigation</u>. There shall not be pending or threatened any suit, action, injunction, investigation, inquiry, or other proceeding against either of the parties before any court or government agency, which, in Buyer's good faith judgment, has resulted or is reasonably likely to result in an order staying or judgment restraining or prohibiting the transactions contemplated hereby or subjecting a party to material liability on the grounds that it has breached any law or regulation or otherwise acted improperly in connection with the transactions contemplated hereby.

Section 7.2 <u>Opinion of Counsel</u>. The obligations of Buyer to purchase the Loans at the first Settlement following execution of this Agreement are subject to Buyer having received an opinion of Seller's legal counsel in form and substance satisfactory to Buyer, as to such matters concerning this Agreement or the Settlement as are reasonably requested by Buyer. Thereafter, at each Settlement Seller's counsel may furnish a reliance letter relating to the original opinion or may provide a new opinion.

Section 7.3 <u>Conditions to Seller's Obligations</u>. The obligations of Seller to sell the Loans at each Settlement are subject to the satisfaction at or prior to such Settlement, of each of the following conditions (any or all of which may be waived by Seller):

(a) <u>Purchase Price</u>. The Purchase Price shall have been delivered to Seller pursuant to Seller's reasonable instructions in accordance with Section 3.3.