(b)   <u>Representations and Warranties Correct</u>. Each of the representations and warranties of Buyer contained in this Agreement shall be true and correct in all material respects in accordance with their terms as of the date of this Agreement, and on and as of such Settlement Date with the same force and effect as though made on and as of such Settlement Date, and if Seller so requests, Buyer shall have delivered to Seller a certificate to such effect signed on Buyer's behalf by its President or another appropriate officer.

(c)   <u>Compliance with Covenants</u>. Buyer shall have performed and be in compliance with, in all material respects, all of its respective covenants, acts, and obligations to be performed under this Agreement, and if Seller so requests, Buyer shall have delivered to Seller a certificate to such effect signed on Buyer's behalf by its President or another appropriate officer.

(d)   <u>Corporate Documents</u>. On or before the Settlement Date, if Seller so requests, Buyer shall have delivered to Seller:

(i)   a certificate of its jurisdiction of incorporation dated not earlier than the date of the tenth day preceding the Settlement Date, to the effect that Buyer is a corporation validly existing and in good standing (if applicable) under the laws of such jurisdiction as of such date;

(ii)   a certificate of the Secretary or Assistant Secretary of Seller attaching (A) evidence of such corporate action or authorization as is necessary to approve this Agreement and the authorization of the officers of Buyer to sign this Agreement, which action or authorization shall continue to be in force as of the Settlement Date, and (B) specimen signatures of the officers of Buyer authorized to sign this Agreement,

(iii)   a copy, certified as true by the Secretary or Assistant Secretary of Buyer, of the charter and the by-laws of Buyer; and

(iv)   all other documents, instruments and writings required to be delivered by Buyer pursuant to this Agreement.

(e)   <u>Corporate Actions</u>. All corporate and other acts necessary to authorize the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereunder shall have been taken by Buyer.

(f)   <u>No Pending Litigation</u>. There shall not be pending or, to the best of Buyer's knowledge upon reasonable due inquiry and investigation, threatened any suit, action, injunction, investigation, inquiry, or other proceeding against either of the parties before any court or government agency, which, in Seller's good faith judgment, has resulted or is reasonably likely to result in an order staying or judgment restraining or prohibiting the transactions contemplated hereby or subjecting a party to material liability on the grounds that it has breached any law or regulation or otherwise acted improperly in connection with the transactions contemplated hereby.

APR-24-07    09:20    FROM-                                        T-768  P.032/067  F-471

## SECTION 8  SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES; REPURCHASE OBLIGATION OF SELLER.

It is understood and agreed that the covenants, representations and warranties set forth in this Agreement shall survive delivery and release of the Offered Loan Documents to Buyer for a period of ten (10) years from the date on which such covenant, representation, or warranty is made. It is further understood that the covenants, representations and warranties set forth in this Agreement shall inure to the benefit of Buyer, or any holder of any endorsement of any Note or any examination of the Offered Loan Documents.

## SECTION 9  POST-SETTLEMENT REPURCHASE AND ADJUSTMENTS

Section 9.1  <u>Repurchase Obligations</u>.

(a)    In the event that

(i)  Seller has failed to deliver to Buyer any document required hereunder with respect to any Loan sold on a Settlement Date within the applicable time period for delivery therefor and such failure has materially and adversely affected Buyer's ability to service or obtain payment on such Loan,

(ii)  Seller has, with respect to any Loan, breached any warranty, representation, or agreement contained in this Agreement, other than those described in Section 9.1(a)(i) or,

(iii)  Seller or any of Seller's representatives has acted fraudulently, negligently, or with willful misconduct in the origination or closing of any Loan.

Buyer shall give Seller notice of, and shall request that Seller cure, such failure, breach, or action within 30 days of Seller's receipt of such notice. With respect to 9.1(a)(i), failure to deliver the documents required by Section 6.9 shall be deemed to materially and adversely affect Buyer's ability to service or obtain payment on a Loan.

(b)  If Seller fails to cure such failure, breach or action within such 30-day period, Seller shall, not later than 30 days after its receipt of notice thereof, repurchase such Loan at the Repurchase Price set forth in Section 9.2.

Section 9.2  <u>Repurchase Price</u>. In the event Seller repurchases a Loan from Buyer pursuant to Section 9.1 above, the Repurchase Price shall be an amount equal to

(a) the product of

(i) the Bid Percentage and

27

(ii) the Principal Balance of such Loan,

(b) minus the aggregate amount of principal made to Buyer on such Loan from the Settlement Date up to, but not including, the date of repurchase,

(c) plus accrued but unpaid interest up to and including the date of repurchase,

(d) plus any reasonable and customary out-of-pocket expenses paid to third parties relating to such Loan (the "Repurchase Price").

Upon payment of the Repurchase Price as set forth herein, Buyer shall deliver the Loan Documents relating to such repurchased Loan and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in Seller title to such repurchased Loan on a servicing released basis. Seller shall pay all out-of-pocket costs incurred in delivering the Mortgage File to the Seller. Except for the negligence or willful misconduct of Buyer or Buyer's representative, the Buyer shall have no liability for the failure by the courier to deliver the Mortgage File to the Seller for any reason whatsoever.

Section 9.3 <u>Remedy to Insure Accuracy of Real Estate Appraisals</u>. Buyer may, at its own expense, in order to verify the accuracy of real property appraisals prepared for Seller, order a reappraisal of the property secured by a Mortgage within 100 days of the applicable Settlement Date. If the reappraisal obtained by Buyer indicates a fair market value of more than twelve (12%) percent less than the original Appraisal Value, then upon receipt by Seller of a signed copy of the reappraisal from Buyer, Seller shall repurchase the Loan at the Repurchase Price and reimburse Buyer for the cost of the appraisal subject to the following: if Seller disputes the validity of the reappraisal prepared by Buyer's appraiser, Seller may at its own expense, request Buyer to obtain a third appraisal, and only if such third appraisal is also more than twelve (12%) percent less than the original Appraisal Value shall the Seller be required to repurchase the Loan at the Repurchase Price and pay for the second appraisal. Buyer shall choose the review appraiser with Seller's approval, which shall not be unreasonably withheld, but such appraiser must possess the minimum qualifications specified in the HFS Seller's Guide. The appraisal must be performed in accordance with the standards of the appraising industry where the property is located, by an independent appraiser unless otherwise agreed to by the parties. In determining the appropriate appraisal value, the review appraiser must determine the appraised value as of the original appraisal date using comparable sales that were available as of the date of the original appraisal.

Section 9.4 <u>Post-Settlement Adjustments to Purchase Price</u>. Within 60 days after each Settlement Date, the first party shall notify the other party in writing of any miscalculations, misapplied payments, unapplied payments or other accounting errors (each, a "Discrepancy") which the first party has discovered and which affects the Principal Balance of any of the Loans purchased on such Settlement Date or the Purchase Price for the Loans purchased on such Settlement Date. Notice to the other party under this Section 9.4 shall include copies of documents sufficient to describe each Discrepancy. Buyer shall pay Seller or Seller shall pay Buyer, as the case may be, an amount sufficient to correct such Discrepancy, with all such adjustments calculated using the

Premium.  Any amounts due hereunder shall be paid within 10 days of notice by the first party to the other party.

## SECTION 10  INDEMNIFICATION

Section 10.1  Seller's Indemnification.

(a)  Seller agrees to indemnify and hold Buyer, its Affiliates, officers, directors, employees, agents, successors, and assigns, and related entities from and to reimburse them for, any loss, cost, expense, damage, liability, or claim (including, without limitation, all Legal Fees) relating to, arising out of, based upon, or resulting from:

(i)  Seller's ownership of or actions with respect to the Loans;

(ii)  Seller's breach of any of its representations and warranties contained in this Agreement; or

(iii)  Seller's breach of or failure to perform any of its covenants or agreements contained in or made pursuant to this Agreement.

(b)  The obligations of Seller under this Section shall survive the transfer and delivery of the Loans to Buyer and the termination of this Agreement.

(c)  Notwithstanding the foregoing, Seller shall not have any liability in respect of the representations or warranties on the part of Seller herein contained to the extent such liability would not have arisen but for Buyer's own willful misconduct or negligence.

Section 10.2  Buyer's Indemnification.

(a)  Buyer agrees to indemnify and hold Seller, its Affiliates, officers, directors, employees, agents, successors, and assigns, and related entities from, and to reimburse them for, any loss, cost, expense, damage, liability, or claim (including without limitation, all Legal Fees) relating to, arising out of, based upon, or resulting from:

(i)  Buyer's ownership of or actions with respect to the Loans;

(ii)  Buyer's breach of any of its representations and warranties contained in this Agreement; or

(iii)  Buyer's breach of or failure to perform any of its covenants or agreements contained in or made pursuant to this Agreement.

(b)  The obligations of Buyer under this Section shall survive the transfer and delivery of the Loans to Buyer or the termination of this Agreement.

(c)  Notwithstanding the foregoing, Buyer shall not have any liability in respect of the representations or warranties on the part of Buyer herein contained to the extent such liability would not have arisen but for Seller's own willful misconduct or negligence.

Section 10.3  Indemnification Procedures.

(a)  Within 10 days after receipt by a party of a third party claim, the indemnified party shall, if a claim in respect thereof is to be made against the indemnifying party under this Agreement, deliver a claim notice to the indemnifying party; provided, however, that the omission so to notify the indemnifying party shall not relieve the indemnifying party from any liability that the indemnifying party may have to the indemnified party otherwise than under this subsection.  In the event that any third party claim is made against the indemnified party and the indemnified party notifies the indemnifying party of the commencement thereof, the indemnifying party shall be entitled to participate therein and, to the extent that it shall wish, to assume the defense thereof, with counsel satisfactory to the indemnified party (who shall not, except with the consent of the indemnified party, be counsel to the indemnifying party), which consent shall not be unreasonably withheld.  The indemnified party shall have the right to employ separate counsel in any action or claim and to participate in the defense thereof at the expense of the indemnifying party, if the retention of such counsel has been specifically authorized by the indemnifying party, if such counsel is retained because the indemnifying party does not notify the indemnified party within 20 days after receipt of a claim notice that it elects to undertake the defense thereof, or if there is a reasonable basis on which the indemnified party's interests may differ from those of the indemnifying party.

(b)  The indemnifying party shall remit payment for the amount of a valid and substantiated claim for indemnification hereunder within 15 business days of the receipt of a claim notice therefor.  Upon the payment in full of any claim hereunder, the indemnifying party shall be subrogated to the rights of the indemnified party against any person with respect to the subject matter of such claim.  In the event of a dispute, the parties shall proceed in good faith to negotiate a resolution of such dispute.

(c)  The indemnified party shall have the right to reject any settlement approved by the indemnifying party if the indemnified party waives its right to indemnification hereunder.  The indemnified party shall have the right to settle any third party claim over the objection of the indemnifying party; provided, however, that if the indemnifying party is contesting such claim in good faith and has assumed the defense of such claim from the indemnified party, the indemnified party waives any right to indemnity therefor.

(d)  In the event that the indemnifying party reimburses the indemnified party with respect to any third party claim and the indemnified party subsequently receives reimbursement from another person with respect to that third party claim, then the indemnified party shall remit such reimbursement from such other person to the indemnifying party within 30 days of receipt thereof.

## SECTION 11  TERMINATION

Section 11.1  Termination by Either Party.

(a)  This Agreement may be terminated with or without cause by either party upon 30 days' written notice to the other party, provided that the delivery requirements and other terms of this Agreement have been fully complied with as to prior Settlements.

(b)  After termination pursuant to Section 11.1(a), the provisions of this Agreement shall continue to apply to any Loans previously transferred from Seller to Buyer pursuant to this Agreement.

Section 11.2  Termination by Buyer.  This Agreement may be immediately terminated by Buyer, at Buyer's sole option, upon notice to Seller upon the occurrence of any of the following events ("Termination Events"):

(a)  Seller breaches or fails to comply with any term or condition of this Agreement and fails to cure such breach or failure within 60 days of receipt of notice thereof from Buyer;

(b)  Any of Seller's representations or warranties in Section 4.1, 4.2, or 4.3 of this Agreement is untrue in any material respect and is not cured by Seller within 60 days of receipt of notice thereof from Buyer;

(c)  Notwithstanding Section 11.2(a), Seller does not deliver the Loans or any Loan Document relating to such Loans within the time periods stated in this Agreement;

(d)  Notwithstanding Sections 11.2(a) and 11.2(b), any document or paper delivered hereunder is incorrect in any material respect or otherwise does not comply with the terms and provisions of this Agreement;

(e)  Any material reduction in Seller's net worth occurs, as determined solely by Buyer;

(f)  A petition for involuntary bankruptcy is filed against Seller, or Seller is adjudged bankrupt or insolvent by a court of competent jurisdiction or a regulatory agency, or a court of competent jurisdiction or a regulatory agency appoints a receiver, liquidator, conservator, or trustee for Seller or all or substantially all of its assets, or approves any petition filed against Seller for its reorganization;

(g)  Seller institutes proceedings for voluntary bankruptcy, files a petition seeking reorganization under the Federal Bankruptcy Code, files under any law for the relief of debtors, consents to the appointment of a receiver of all or substantially all of its property, makes a general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due;

(h)  Seller merges with or consolidates into another corporation, sells or otherwise disposes of all or substantially all of its property and assets, or permits any change to occur in the stock ownership of Seller which would transfer effective voting control from the persons now exercising such control to others; and

(i)  The placement of Seller on probation or restriction of its activities in any manner by a Federal or state government agency, including FHLMC, FNMA, or GNMA.

Section 11.3  Effect of Termination.  Upon expiration of the 30 day notice period pursuant to Section 11.1(a) or upon written notice to Seller, pursuant to Section 11.2 that a Termination Event has occurred, this Agreement shall be of no force and effect and the parties obligations to each other hereunder shall cease; provided, however, that each party shall continue to have such obligations as may remain with respect to all Loans acquired by Buyer in Settlements that have occurred prior to the date on which this Agreement terminates.

## SECTION 12  MISCELLANEOUS

Section 12.1  No Waiver.  Failure or delay on the part of Buyer to audit any Loan or to exercise any right provided for herein, shall not act as a waiver thereof, nor shall any single or partial exercise of any right by Buyer or Seller preclude any other or further exercise thereof.  In no event shall a term or provision of this Agreement be deemed to have been waived, modified or amended, unless said waiver, modification or amendment is in writing and signed by the parties hereto.  Notwithstanding any investigation conducted before or after the purchase of any Loan, and notwithstanding any actual or implied knowledge or notice of any facts or circumstances which Buyer may have as a result of such investigation or otherwise, Buyer shall be entitled to rely upon the warranties, representations, and covenants of Seller in this Agreement, and the obligations of Seller with respect thereto shall survive the purchase of said Loans by Buyer and inure to the benefit of all future assignees of said Loans.

Section 12.2  Amendment and Modification.  Subject to applicable law, this Agreement may not be amended, modified, or supplemented except in writing signed by both parties. Notwithstanding the foregoing, Seller may unilaterally amend the underwriting standards set forth in Schedules 4.2(b)(A) and 4.2(b)(B) upon the thirty (30) days written notice to Buyer.

Section 12.3  Notices.  All notices, requests, demands, consents, approvals, agreements, or other communications to or by a party to this Agreement shall:

(a)  be in writing addressed to the authorized address of the recipient set out in Section 12.3(c) of this Agreement or to such other address as such recipient may have notified the sender;

(b)  be signed by an authorized officer of the sender; and

(c) be delivered in person or sent by registered or certified mail return receipt requested, facsimile transmission, or by overnight courier and be deemed to be duly given or made:

(i) in the case of delivery in person when delivered to the recipient at such address;

(ii) in the case of registered or certified mail three days after the date of mailing;

(iii) in the case of overnight courier two days after shipment or the date of receipt, whichever is earlier; or

(iv) in the case of facsimile transmission when received in legible form by the recipient at such address and in the event that the recipient has been requested to acknowledge receipt of the entire facsimile transmission upon the sending or receiving the acknowledgment of receipt (which acknowledgment the recipient will promptly give);

but if such delivery or dispatch is later than 5:00 p.m. local time on a day on which business is generally carried on in the place to which such communication is sent or occurs on a day on which business is not generally carried on in the place to which such communication is sent, it will be deemed to have been duly given or made at the commencement of business on the next day on which business is generally carried on in that place.

Notices may be sent

to Buyer:          Household Financial Services, Inc.
                   2700 Sanders Road
                   Prospect Heights, IL 60070
                   Attn: Vice President
                   Facsimile No.: (847) 559-7196

                   JV Mortgage Capital, L.P.
                   2700 Sanders Road
                   Prospect Heights, IL 60070
                   Attn: Vice President
                   Facsimile No.: (847) 559-7196

with a copy to:Household Financial Services, Inc.
                   2700 Sanders Road
                   Prospect Heights, IL  60070
                   Attn: General Counsel
                   Facsimile No.: (847) 205-7447

33

To Seller:         *Creve Coeur Mortgage*
                   *11525 Olde Cabin Road*
                   *Creve Coeur, MO 10341*
          *Attn: Thomas Barr*
with a copy to: General Counsel
               at the above address

or to such other address as Buyer and Seller shall have specified in writing to each other.

Section 12.4  Expenses.  Each party hereto shall bear its own expenses, including the fees of any attorneys, accountants, or others engaged by such party, in connection with this Agreement and the transactions contemplated hereby, except as otherwise expressly provided herein.

Section 12.5  No Remedy Exclusive.  No remedy under this Agreement is intended to be exclusive of any other available remedy, but each remedy shall be cumulative and shall be in addition to other remedies under this Agreement or existing at law or in equity.

Section 12.6  Independent Contractor.  Nothing herein contained shall be deemed or construed to create a partnership or joint venture between Seller and Buyer.  In the performance of its duties or obligations under this Agreement or any other contract, commitment, undertaking, or agreement made pursuant to this Agreement, neither Seller nor Buyer shall be deemed to be, or permit itself to be, understood to be the employee or agent of the other and shall at all times take whatever measures as are necessary to insure that its status shall be that of an independent contractor operating as a separate entity.  None of Seller's or Buyer's employees, agents or servants is entitled to the benefits that are provided to the employees of the other party.  Each party is solely interested in the results obtained under this contract and therefore the manner and means of conducting the other party's business affairs are under the sole control of such other party and such other party shall be solely and entirely responsible for its acts and for the acts of its agents, employees, and servants.

Section 12.7  Severability.  If any one or more of the provisions of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions of this Agreement shall not be affected thereby.  To the extent permitted by applicable law, each party hereto waives any provision of law which renders any provision of this Agreement invalid, illegal, or unenforceable in any respect, unless material to the purpose of this Agreement.

Section 12.8  Entire Agreement.  Seller and Buyer each acknowledges that no representations, agreements, or promises were made to such party by the other party or any of its employees other than those representations, agreements, or promises specifically contained herein.  This Agreement and any Schedules and Exhibits hereto constitute the entire agreement and understanding of the parties with respect to the matters and transactions contemplated hereby.  This Agreement supersedes any prior agreement and understanding with respect to these matters and transactions.

34

Section 12.9 _Assignment_. Except as set forth in the following sentence, neither party shall have the right to assign any of its duties, obligations, or rights under this Agreement without the prior written consent of the other. Buyer shall have the right to assign its rights under this Agreement to any Affiliate or to any trust created to effect a securitization involving the Loans, and in such event no such assignment shall relieve either party of any liability under this Agreement.

Section 12.10 _Captions_. The captions in this Agreement are for convenience only, do not form a part hereof, and do not in any way modify, interpret, or construe the intentions of the parties hereto.

Section 12.11 _Governing Law_. This Agreement shall be governed by and be construed in accordance with the laws of the State of Illinois, without regard to the conflicts of laws rules thereof.

Section 12.12 _Counterparts_. This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 12.13 _Drafting_. Each party acknowledges that its legal counsel participated in the preparation of this Agreement. The Parties therefore stipulate that the rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement to favor any party against the other.

Section 12.14 _Choice of Forum_. Any judicial proceeding brought against any of the parties hereto with respect to this Agreement shall be brought in any court of competent jurisdiction in Cook County, Illinois or in the Federal District Court for the Northern District of the State of Illinois irrespective of where such party may be located at the time of such proceeding, and by execution and delivery of this Agreement, each of the parties to this Agreement hereby consents to the exclusive jurisdiction of any such court and waives any defense or opposition to such jurisdiction.

**Section 12.15 WAIVER OF JURY TRIAL. EACH PARTY HERETO WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

IN WITNESS WHEREOF, Buyer and Seller have caused their respective duly authorized representatives to execute this Agreement as of the date first above written.

BUYER:

HOUSEHOLD FINANCIAL SERVICES, INC.

By: _____

Name: _____Loren J. Morris_____

Title: _____ V.P.

JV MORTGAGE CAPITAL, L.P.

By: _____

Name: ____Loren J. Morris_____

Title: _____V.P._____

SELLER:

CREVE COEUR MORTGAGE

By: _____

Name: __Thomas Barr_____

Title: __Sr. Vice President_____

i:\hbfsblaw\standard\BulkAgr.3
11/30/99

## EXHIBIT A

### CONTENTS OF LEGAL FILE

With respect to each Loan, the Legal File shall include each of the following items, which shall be delivered to the Buyer.

1.  The original Note, bearing all intervening endorsements, endorsed, "Pay to the order of _____, without recourse" and signed in the name of Seller by an authorized officer or by facsimile signature.

2.  Either: (i) the original recorded Mortgage with recording information thereon, together with a certified true copy of the original power-of-attorney showing the recording information thereon if the Mortgage was executed by an attorney-in-fact, (ii) a certified true copy of the Mortgage and of the power-of-attorney (if applicable) the originals of which have been transmitted for recording, until such time as the originals are returned by the public recording office in which case the Seller shall deliver the original recorded Mortgage within 5 business days of receipt from the County Records Office; or (iii) a copy of the Mortgage certified by the public recording office in those instances where the public recording office retains the original or the original is lost, together with a duplicate original mortgagee's certificate of title if the Mortgage is registered under the Torrens system.

3.  The original Assignment of Mortgage for each Loan, in blank, in form and substance acceptable to Buyer and its counsel, and for recording but not recorded, signed in the name of Seller by an authorized officer; provided, however, that certain recording information will not be available if, as of the Settlement Date, Seller has not received the related recorded Mortgage from the recorder's office.

4.  A copy of the title search and mortgage title insurance commitment or the original mortgage title insurance policy issued by an approved ALTA title insurance company on such form and subject to such exceptions as are approved by Buyer and Buyer's counsel; provided, however, that if the original is not available as of the date the Mortgage is delivered to Buyer, Seller shall deliver the original to Buyer within sixty (60) days after the Settlement Date, or if it has not been received by that date, within 5 business days after receipt from the title company. Seller shall make all due efforts to obtain and deliver such title policy within the above time period.

5.  Originals of all intervening assignments, if any, with evidence of recording thereon, or certified true copies with evidence that the originals have been transmitted for recording until such time as the originals are returned by the public recording office, or a copy of each such assignment certified by the public recording office if such office retains the original, or if such original is lost.

6.  Originals of all assumption, modification, consolidation or extension agreements with evidence of recording thereon, if any.

7.  Original guarantee, if any.

8.  The original of any security agreement, chattel mortgage or equivalent, executed in connection with the Mortgage, if any.

E-2

## EXHIBIT B

### CONTENTS OF CREDIT FILE

With respect to each Loan, the Credit File shall include each of the following items.

1.  A copy of the original Note, bearing all intervening endorsements, endorsed, "Pay to the order of _____, without recourse" and signed in the name of Seller by an authorized officer or by facsimile signature.

2.  A copy of either: (i) the original recorded Mortgage with recording information thereon, together with a certified true copy of the original power-of-attorney showing the recording information thereon if the Mortgage was executed by an attorney-in-fact; (ii) a certified true copy of the Mortgage and of the power-of-attorney (if applicable) the originals of which has been transmitted for recording, until such time as the originals are returned by the public recording office; or (iii) a copy of the Mortgage certified by the public recording office in those instances where the public recording office retains the original or the original is lost, together with a duplicate original mortgagee's certificate of title if the Mortgage is registered under the Torrens system.

3.  A copy of the original Assignment of Mortgage for each Loan, in blank, in form and substance acceptable to Buyer and its counsel, and for recording but not recorded; provided, however, that certain recording information will not be available if, as of the Settlement Date, Seller has not received the related recorded Mortgage from the recorder's office.

4.  A copy of the original policy of title insurance (or, if such policy has not yet been issued by the insurer, the preliminary title report).

5.  A copy of all intervening assignments, if any, with evidence of recording thereon, or certified true copies with evidence that the originals have been transmitted for recording until such time as the originals are returned by the public recording office, or a copy of each such assignment certified by the public recording office if such office retains the original, or if such original is lost.

6.  A copy of all assumption and modification agreements, if any.

7.  A survey or plat of the Mortgaged Property (except if the Mortgaged Property is a condominium unit), unless the title insurance contains a 116 or "no survey" endorsement.

8.  Original hazard insurance policy (or certificate of insurance for a condominium or planned unit development unit) and certificate or original policy of flood insurance, if applicable. (In lieu of an insurance policy for each Loan, Seller may carry a Mortgage Impairment Policy meeting the requirements of FNMA or FHLMC).

9.     Loan closing statement or a copy thereof.

10.    Residential loan application.

11.    Verification of employment and income (if applicable).

12.    Verification of evidence of source and amount of down payment (if applicable).

13.    Credit report on the Obligor.

14.    Residential appraisal report.

15.    Photograph of the property.

16.    (a)    Payment records and current and historical computerized data files; and

         (b)    tax receipts, insurance premium receipts, ledger sheets, insurance claim files and correspondence, correspondence, and all other papers and records developed or originated by Seller or others, required to document the Loan or to service the Loan provided, however, that these items may be provided no later than 15 days after the Service Transfer Date.

17.    A copy of the guarantee, if any.

18.    Copies of any security agreement, chattel mortgage or equivalent, executed in connection with the Mortgage, if any.

19.    Copy of each instrument necessary to complete identification of any exception set forth in the title policy, if any.

20.    All required disclosure statements, including a copy of the HUD good faith estimate, HUD-1 settlement statement and TILA disclosure statement prepared in connection with the Loan indicating that the Obligor has received all disclosures required by the RESPA and TILA.

21.    Termite reports, structural engineer's report, water potability and septic certification, if any.

22.    Sales contract, if any.

23.    If the Mortgaged Property is a leasehold estate, a copy of the lease with evidence of recording thereon (or, if such recorded copy has not yet been returned to Seller by the applicable recording office, a copy thereof certified by Seller to be a true, correct and complete copy of such lease sent for recording).

24.  Any and all documents, agreements or instruments related to the Loan or the Note and Seller's right and benefits therein; all documents related to the making and closing of the Loan; and any other documents, agreements, or instruments related to the Loan or required by Buyer, in order to perfect its right, title and interest in and to the Loan or required by Buyer in order to enable Buyer to sell the Loan to a private investor or as part of a securitization or other financing vehicle.

25.  A statement showing the account number, customer name, unpaid principal balance of the Loan, the amount of periodic installments and the date(s) to which principal, interest and any escrows have been paid, the accrued but unpaid interest up to and including the Settlement Date provided, however, that this information may be provided in a trial balance; and, if required by Buyer, a ledger card or ledger history reflecting all receipts and disbursements from the inception of the Loan including the date of each receipt or disbursement, provided, however, that these items may be provided no later than 15 days after the Service Transfer Date.

SCHEDULE 1

Information to be Included in Offered Loan Schedule

Attached.

SCHEDULE 1 continued

Preliminary Data Required to Price Pool

Loan Number
Documentation Type
Credit Grade
Loan Purpose
Name
State
Zip
Current Principal Balance
Original Term, including Balloon information
Origination Date
Prepayment
Rate-Fixed/Adjustable
Index
Gross Margin
Current Mortgage Interest Rate
Rate Adjustment Periods
Rate Adjustment Caps
Rate Floor
Rate Ceiling
1st Payment Due Date
Next Due
Debt Ratio
Lien Position
Senior Balances
LTV-Combined (CLTV)
Property Type
Occupancy

APR-24-07    09:25    FROM-                                    T-768    P.049/067    F-471

SCHEDULE 2

Seller's Underwriting Standards

Attached.